VIOLET T. MURPHY *v.* BERLIN BOARD OF EDUCATION

HOUSE, C. J., COTTER, SHAPIRO, LOISELLE and BOGDANSKI, JS.

Argued October 4—decision released December 10, 1974

*James M. S. Ullman,* with whom, on the brief, was *Thomas T. Lonardo,* for the appellant (plaintiff).

*Harry N. Jackaway,* for the appellee (defendant).

COTTER, J. This is an appeal from a judgment of the Court of Common Pleas dismissing the plaintiff's appeal from the order of the defendant board of education of the town of Berlin, placing the plaintiff on probationary status for twelve months and withholding for the same period any increase in salary, other than longevity payments, which would ordinarily accrue during that period.

The plaintiff, Mrs. Violet T. Murphy, has been a public school teacher for thirty years, twenty-eight of which have been at Berlin High School. On March 6, 1973, Edward J. Rogean, superintendent of schools, advised her by letter that a complaint had been lodged against her by the parents of James Szymanoski, one of her students. A copy of the letter of complaint, dated February 16, 1973, was enclosed by Rogean at that time. In his letter, Rogean indicated that the Berlin board of education had directed him to meet with her and Robert P. Long, principal of Berlin High School, at which time she would have the opportunity "to confirm or deny the charges" lodged against her by the student's parents; however, Rogean added, should Mrs. Murphy prefer not to meet with him and Long, she would have the opportunity to meet directly with the board and reply to the letter then.

Basically, the parents complained that (1) their son had received a "D" on his report card in history for the first marking period; (2) Mrs. Szymanoski was twice unable to reach Mrs. Murphy by telephone at school; (3) their son received an "F" on his mid-term examination and a "D" for his mid-term average in history; (4) seventeen out of twenty-four students in their son's history class failed the mid-

term; (5) Mrs. Murphy made rude remarks to Mrs. Szymanoski in a telephone conversation on February 15, 1973.

Mrs. Murphy chose not to meet with Long and Rogean; accordingly, the Berlin board of education set a hearing date of April 2, 1973, later postponed to April 9. Rogean wrote Mrs. Murphy to notify her of the hearing, the purpose of which he stated was "to give you an opportunity to confirm or deny the complaints presented by Mr. and Mrs. Szymanoski in their letter dated February 16, 1973." Thereafter, Mrs. Murphy and her lawyer attended the executive session of the board on April 9, 1973; a continuance was granted until April 16, 1973. They attended that hearing and introduced evidence which showed that between October 6, 1972, and March 13, 1973, James Szymanoski was absent from Mrs. Murphy's history class a total of twenty-six times; six of these absences were excused, and twenty were unexcused; the student's academic performance in history was at all times poor; and finally, he missed completely or performed very poorly on a substantial number of his "required quizzes" in Mrs. Murphy's class.

After the plaintiff and her attorney left the hearing, various members of the board voiced their personal opinion of Mrs. Murphy. Three courses of action were considered by the board: a written reprimand; withholding of any salary increment to be received for the next year; and dismissal. On April 23, 1973, the board convened and agreed to place her on probation for one year and to freeze her salary at the then current level of $13,780, rather than the $14,400 called for in the new salary schedule. Thereafter, on April 26, 1973, the board notified

Mrs. Murphy by letter of their action and identified three separate grounds for their decision: "(a) The Board of Education questions your failure to adequately contact the parents of the student in question, with the exception of a deficiency notice. (b) A further question was raised by the attitude displayed in the presence of the Board demonstrating a lack of sympathy and understanding of the problems of the students of average and below average ability. Such a statement as 'my class is a dumping ground' does not appear to present the proper attitude toward students, and (c) A third point was the failure to carry out and pursue the channels available for students participating in the Work-Experience Program."

Mrs. Murphy has assigned error, inter alia, in the trial court's conclusion that the board of education did not act in violation of statutory provisions or in excess of its authority. More precisely, she claims that in considering evidence against her that was not related to the particular charges of which she had prior written notice, and in taking disciplinary action against her on the basis of consideration of charges other than those of which she was notified in advance of the hearing, the board deprived her of rights to which she was entitled under the provisions of the Uniform Administrative Procedure Act, hereinafter referred to as UAPA. General Statutes §§ 4-177 (a), (b) (1) and (4); 4-178 (1); and 4-177 (g).

## I

This court has not had occasion to rule on the applicability of the UAPA to adjudicative proceedings conducted by town boards of education. Under

the statute,[1] the organization whose decision is the subject of an appeal to the courts must be an "agency" within the meaning of § 4-166 (1) if the provisions of the act are to apply. The term "agency" means "each state board . . . authorized by law . . . to determine contested cases." General Statutes § 4-166 (1). It has long been held in Connecticut that town and city boards of education are subject to local control only as to budgetary matters. *Bridgeport* v. *Agostinelli,* 163 Conn. 537, 551, 316 A.2d 371; *Waterbury Teachers Assn.* v. *Furlong,* 162 Conn. 390, 397, 294 A.2d 546; *Board of Education* v. *Ellington,* 151 Conn. 1, 6, 193 A.2d 466. In all other respects, the local boards "serve as agents of the state in their communities." *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 573, 295 A.2d 526; *Fowler* v. *Enfield,* 138 Conn. 521, 530, 86 A.2d 662. This is true because the furnishing of education for the general public, required by article eighth, § 1, of the Connecticut constitution,[2] is by its very nature a state function and duty. *West Hartford Education Assn., Inc.* v. *DeCourcy,* supra; *State ex rel. Board of Education* v. *D'Aulisa,* 133 Conn. 414, 418, 52 A.2d 636. The local boards have of necessity been delegated this responsibility. *West Hartford Education Assn., Inc.* v. *DeCourcy,* supra; *Fowler* v. *Enfield,* supra. In addition, "[o]ur statutes have conferred on the local board broad power and discretion over educational policy." Ibid. As an example of statutory authority conferring

---

[1] We construe the provisions of the UAPA only as they were in effect during the period of time in which the facts giving rise to the present action occurred.

[2] Constitution of Connecticut, article eighth, § 1: "There shall always be free public elementary and secondary schools in the state. The general assembly shall implement this principle by appropriate legislation."

upon town and local boards the power to implement statewide policy, this court has, on a previous occasion, cited General Statutes § 10-220, which, inter alia, directs the boards to "employ and dismiss the teachers of the schools" in the towns. See *West Hartford Education Assn., Inc.* v. *DeCourcy, supra,* 573-74. Clearly, then, town boards of education such as the Berlin board, in matters not involving strictly budgetary concerns, act as agents of the state under the authority of our state constitution and the enactments of our legislature. In the absence of any indication to the contrary in the statute itself, its legislative history, or our cases, we conclude that the term "state board" includes such entities as the Berlin board of education, when acting as an agent of the state.

The UAPA further defines "contested case" as "a proceeding . . . in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing." General Statutes § 4-166 (2). Implicit in the letter of the Berlin board notifying Mrs. Murphy of the complaints against her and requesting her to "confirm or deny" these complaints was the suggestion that her dismissal as a teacher may have been under consideration. In fact, the board later, in executive session, debated whether to dismiss her, but voted against this action. Under the Teachers Tenure Act, a teacher in Mrs. Murphy's circumstances is entitled to a hearing when a board is considering the termination of her contract. General Statutes § 10-151 (b). The hearing held in this case was, then, one "required by law," and the proceeding as a result of which the board took disciplinary action against her was a "contested case" within the meaning of § 4-166 (2).

Finally, there can be no doubt that the Berlin board is "authorized by law" to determine "contested cases," pursuant to § 4-166 (1). Such authority is implicit in the broad grant of discretionary power conferred upon boards of education by our legislature in its instructions to such boards to "employ and dismiss" teachers. General Statutes § 10-220.

We conclude that the pertinent provisions of the UAPA apply to such proceedings as that conducted by the Berlin board of education in this case.

## II

Under the act, "[i]n a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice"; § 4-177 (a); and "[t]he notice shall include: (1) A statement of the time, place, and nature of the hearing" and "(4) a short and plain statement of the matters asserted." General Statutes § 4-177 (b). In discussing sufficiency of notice in administrative proceedings, this court has stated that the notice of charges against a party whose rights are to be adjudicated by an agency "should state them with sufficient particularity so that he may be fairly apprised of the nature of the offense with which he is charged." *Jaffe* v. *State Department of Health,* 135 Conn. 339, 352, 64 A.2d 330. See, generally, *Andrus* v. *Church,* 117 Wash. 627, 201 P. 917; 2 Am. Jur. 2d, Administrative Law, § 360; 78 C.J.S., Schools and School Districts, § 204 (c). It has been noted that the function of sufficient notice is "to notify the adverse party of the claims that are to be adjudicated so that he may prepare his case, and to set a standard of relevance which shall govern the proceedings at the hearing." *Douds* v. *International Longshoremen's Assn.,* 241

F.2d 278, 283 (2d Cir.); see also 1 Davis, Administrative Law, § 8.04. Notice will not ordinarily be held insufficient for nonprejudicial deficiencies, as where, for example, the record discloses that the person actually knew what the charges against him were. See, e. g., *Conley* v. *Board of Education,* 143 Conn. 488, 494, 123 A.2d 747; *Hanson* v. *Michigan State Board,* 253 Mich. 601, 236 N.W. 225, cert. denied, 284 U.S. 637, 52 S. Ct. 19, 76 L. Ed. 542; 73 C.J.S., Public Administrative Bodies and Procedure, § 131. But it is not uncommon for courts to set aside the order of an agency for deficiency of notice where the person does not learn of all the charges against him prior to the hearing, even though he later presents evidence in cross-examining witnesses on the issue with respect to which the notice is deficient. See, e.g., *Petition of Village Board of Wheatland,* 77 N.D. 194, 42 N.W.2d 321.

In this case, the letter Mrs. Murphy received from the Berlin board notifying her of the charges against her and the time and place of the hearing on these charges included only the specific complaints lodged by Mrs. Szymanoski involving Mrs. Murphy's conduct toward the student James Szymanoski. The board based its decision to take disciplinary action against Mrs. Murphy, however, not only upon a determination of these charges, but also on the basis of her general attitude toward students of average and below average ability and her involvement with students participating in the "Work-Experience Program." Nowhere in the record is there any indication that prior to the hearing Mrs. Murphy knew that she would have to respond to charges upon which these latter two conclusions were based. It is incontrovertible that these were not "matters asserted" in the letter of notice from the board to

Mrs. Murphy as contemplated by General Statutes § 4-177 (b) (4). This deficiency in the notice prejudiced her interests, since she could not have prepared an adequate defense, prior to the hearing, to charges of which she was wholly unaware. We conclude that in this respect the board acted in violation of § 4-177 (b) (4) in a manner that adversely affected the plaintiff's interests.

The act also requires that "[f]indings of fact shall be based exclusively on the evidence and on matters officially noticed." General Statutes § 4-177 (g). The record in this case indicates, however, that the Berlin board's findings were based not only on evidence relating to the matters raised in the letter of notice to Mrs. Murphy, but also on evidence relating to her reputed conduct toward average and below-average students in general, and to her involvement with students participating in the "Work-Experience Program." These were not "matters officially noticed" as described in § 4-177 (g). Thus in this respect as well the board proceeded in a manner that violated provisions of the act.

Finally, "[i]n contested cases: (1) Irrelevant, immaterial, or unduly repetitious evidence shall be excluded." General Statutes § 4-178. The standard of relevance which governs the proceedings at an agency hearing is set by the complaint as propounded in the notice of charges provided by the agency. *Douds* v. *International Longshoremen's Assn.*, supra; see also *N.L.R.B.* v. *Armato*, 199 F.2d 800 (7th Cir.); *Polar Ice Cream & Creamery Co.* v. *Andrews*, 155 So. 2d 716 (Fla. App.). Consequently, the evidence considered by the board relating to Mrs. Murphy's conduct toward average and below-average students, and to her involvement

with students participating in the "Work-Experience Program," was irrelevant. The board's action in so proceeding was of particular importance since conclusions derived from this irrelevant evidence formed two of the grounds upon which the board decided to take disciplinary action against Mrs. Murphy. We cannot determine from the record whether the board would indeed have made the same decision had it considered only evidence relevant to the complaint of which Mrs. Murphy in fact had proper notice.

Under the act the lower court was empowered to "affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of . . . statutory provisions." General Statutes § 4-183 (g). In light of the foregoing it follows that the conclusions of the court in dismissing the appeal cannot be sustained.

There is error, the judgment is set aside and the case is remanded to the Court of Common Pleas for further proceedings in conformity with this opinion.

In this opinion the other judges concurred.