FLORENCE McDERMOTT *v.* COMMISSIONER OF
CHILDREN AND YOUTH SERVICES

HOUSE, C. J., COTTER, MACDONALD, BOGDANSKI and LONGO, Js.

Argued February 5—decision released May 13, 1975

*John F. Gill,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellant (defendant).

*Barry Scheinberg,* with whom, on the brief, were *Michael Sucoll* and *Edward Gallant,* for the appellee (plaintiff).

MacDonald, J. This is an appeal by the defendant, commissioner of the department of children and youth services, hereinafter commissioner, from a judgment rendered by the Court of Common Pleas sustaining the plaintiff's appeal from the commissioner's action in discharging the plaintiff from her position as a teacher in the service of the state on the grounds of incompetency and insubordination. It is the claim of the commissioner that the court erred: (1) in concluding that the plaintiff did not receive a fair and impartial hearing; (2) in concluding that there was insufficient evidence to support the termination of the plaintiff's contract as a teacher for incompetency and insubordination;

(3) in ordering the commissioner to reinstate the plaintiff with back pay and benefits lost since her discharge.

The plaintiff, Florence McDermott, employed by the department of children and youth services as a state teacher at Long Lane School in Middletown, was "suspended immediately . . . for serious misconduct" by written notice, dated February 21, 1973, in accordance with the provisions of § 5-242 (b) of the General Statutes, the relevant portions of which are set forth in the footnote,[1] which further notified

---

[1] "[General Statutes] Sec. 5-242. APPOINTMENT AND TENURE OF TEACHERS IN STATE INSTITUTION SCHOOLS. . . . (b) Beginning with and subsequent to the fourth year of continuous employment of such an employee by such employer, the contract of employment of such employee shall be renewed from year to year, except that it may be terminated at any time for one or more of the following reasons: (1) Inefficiency or incompetence; (2) insubordination against reasonable rules of the employer; (3) moral misconduct; (4) disability, as shown by competent medical evidence; (5) elimination of the position to which the employee was appointed, if no other position exists to which he may be appointed if qualified; or (6) other due and sufficient cause; provided, prior to terminating a contract, an employer shall give the employee concerned a written notice that termination of his contract is under consideration and, upon written request filed by such employee with such employer within five days after receipt of such notice, shall within the next succeeding five days give such employee a statement in writing of its reasons therefor. Within twenty days after receipt from an employer of written notice that contract termination is under consideration, the employee concerned may file with such employer a written request for a hearing, which such employer shall hold within fifteen days after receipt of such request. Such hearing shall be public if the employee so requests or the employer so designates. The employee concerned shall have the right to appear with counsel of his choice at such hearing, whether public or private. An employer shall give the employee concerned its written decision within fifteen days after such hearing, together with a copy of a transcript of the proceedings, which shall be furnished without cost. Nothing herein contained shall deprive an employer of the power to suspend an employee from duty immediately when serious misconduct is charged without prejudice to the rights of the employee as otherwise provided in this section."

her that her contract of employment was terminated for reasons of incompetency, moral misconduct and insubordination. Following the procedure outlined in § 5-242 (b), the plaintiff, on March 9, 1973, requested a hearing on all issues and was duly notified that such a hearing would be held on March 28, 1973. Thereafter, it was agreed that the hearing would be continued until certain criminal charges then pending against the plaintiff were terminated, and on August 28, 1973, the commissioner notified the plaintiff that the moral misconduct charge would be dropped owing to her exoneration of the criminal charges.

Following the plaintiff's request for a hearing on the remaining charges of incompetency and insubordination, and a request by her for more specific information as to those charges, the commissioner furnished the plaintiff with the information requested together with a memorandum in support of the charges. A hearing was conducted on the two remaining charges on October 5 and October 12, 1973, and the plaintiff was thereafter notified by letter dated October 25 that the evidence elicited at the hearings fully sustained the charges and by another letter dated October 26 that her contract had been terminated because of incompetency and insubordination. The plaintiff appealed the commissioner's decision to the Court of Common Pleas under the provisions of § 5-242 (e),[2] and that court

[2] "[General Statutes] Sec. 5-242. APPOINTMENT AND TENURE OF TEACHERS IN STATE INSTITUTION SCHOOLS. . . . (e) Any employee aggrieved by the decision of an employer after a hearing as provided in subsection (b) of this section may appeal therefrom, within thirty days of such decision, to the court of common pleas for the county or judicial district in which such employer is located. Such appeal shall be made returnable to said court in the same manner as is prescribed for civil actions brought to said court. Any such appeal shall be a privileged case to be heard by the court as soon

sustained her appeal and ordered that she be reinstated and further that she be awarded all back pay and benefits from the date of her suspension.

The statutory provision, General Statutes § 5-242, of the State Personnel Act, pursuant to which the disciplinary proceedings in this case were conducted, is substantially similar to the provision (§ 10-151 [b]) of the Teachers Tenure Act. We recently held that hearings conducted under the latter act are subject to the provisions of the Uniform Administrative Procedure Act, hereinafter UAPA, General Statutes §§ 4-166—4-189; *Murphy* v. *Berlin Board of Education,* 167 Conn. 368, 374, 355 A.2d 265. The reasons which led us in that case to conclude that the UAPA applied to Teachers Tenure Act hearings just as urgently compel the conclusion that the UAPA likewise applies to the procedures followed with respect to hearings held under the auspices of the State Personnel Act: The "employer" of the plaintiff was a "state board" or "commission" within the meaning of § 4-166 (1); see § 5-242 (a), (b); the dispute below was a "contested case" within the meaning of § 4-166 (2); see § 5-242 (b), and *Murphy* v. *Berlin*

after the return day as is practicable. The employer shall file with the court a copy of the complete transcript of the proceedings of the hearing held by such employer for such employee, together with such other documents, or certified copies thereof, as shall constitute the record of the case appealed from. The court, upon such appeal, shall review the proceedings of such hearing and shall allow any party to such appeal to introduce evidence in addition to the contents of such transcript, if it appears to the court that additional testimony is necessary for the equitable disposition of the appeal. The court, upon such appeal and after a hearing thereon, may affirm or reverse the decision appealed from. Costs shall not be allowed against such board unless it appears to the court that it acted with gross negligence or in bad faith or with malice in making the decision appealed from."

*Board of Education,* supra; and the agency in question was "authorized by law" to determine "contested cases," within the meaning of § 4-166 (1); see § 5-242 (b).

In *Murphy* the plaintiff sought relief through the UAPA, and we construed the act to be a proper jurisdictional vehicle to countenance such an appeal. The present case presents a different situation, since the plaintiff's appeal was brought pursuant to the jurisdictional grant under General Statutes § 5-242 (e), and neither party argued the applicability of the UAPA. Studying the act and our decision in *Murphy,* we conclude that the UAPA was intended to be a uniform guide to all agency action, as the term "agency" is defined in § 4-166 (1). Prior to the enactment of the UAPA, however, there existed separate statutory appellate procedures to be applicable to particular agencies, such as § 5-242 (e), which procedures are yet extant. We must construe the UAPA to achieve the purpose intended by the legislature and, where possible, to read the separate, preexisting statutory appellate procedures consistently and in keeping with the UAPA provision governing judicial review, § 4-183.[3] Where the preexisting statutes cannot be construed as consistent with the UAPA those statutes are repealed by virtue of § 4-189.[4]

Reading the UAPA and *Murphy* we find that the act was designed for two purposes. First, it pro-

[3] Section 4-183 (a) provides in pertinent part: "This section [§ 4-183] does not limit utilization of or the scope of judicial review available under other means of review, redress, relief or trial de novo provided by law."

[4] Section 4-189 provides in pertinent part: "Any provisions in the general statutes which are inconsistent with the provisions of . . . [sections 4-166—4-189] are repealed . . . ." It should be noted

vides for uniform standards by which all non-exempted agency action is to be judged; second, it provides a vehicle for judicial review as an alternative to preexisting statutes or in situations in which no appellate review was previously provided. Thus, where a party appeals pursuant to the jurisdictional grant of the UAPA, the agency action is measured by the standards contained within the UAPA. Similarly, where a party relies upon a separate statutory authorization, such as § 5-242 (e), for judicial review, the reviewing court must then look to the UAPA to weigh the correctness of the agency action. This conclusion is supported by the application of the UAPA in *Murphy*. Under the Teachers Tenure Act a separate appellate procedure existed, § 10-151 (f), in language identical to § 5-242 (e).

Since the UAPA applied to the proceedings in this case (which were conducted in October, 1973, after the 1973 amendments to the UAPA had gone into effect, viz., Public Acts 1973, No. 73-620, §§ 1–18, effective June 11, 1973), the conduct of these proceedings was subject to the standards of fairness and impartiality articulated in the provisions of that statute, as well as the standards obtaining in the State Personnel Act and in our state and federal constitutions. See *State ex rel. Leggett* v. *Jensen*, 318 S.W.2d 353 (Mo.) ; 2 Am. Jur. 2d 613, Administrative Law, § 711.

---

that § 4-189 and § 4-183 (a), as quoted in footnote 3, must be read together in order to understand the effect of § 4-189 on judicial review. Although § 4-183 (a) does not limit "utilization of or the scope of judicial review" otherwise available, § 4-189 mandates that those alternatives be, at least, coextensive with the relevant provisions of the UAPA. The alternatives may provide the reviewing court powers, remedial or otherwise, broader than those provided in the UAPA, without offending the purpose of § 4-189.

Under § 4-178 (1), as amended, in such proceedings, "[a]ny oral or documentary evidence may be received, but the agency shall, as a matter of policy, provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence." As we stated in *Murphy*, "[t]he standard of relevance which governs the proceedings at an agency hearing is set by the complaint as propounded in the notice of charges provided by the agency." *Murphy* v. *Berlin Board of Education*, supra, 376. The plaintiff in this case was informed by letter on August 23, 1973, that the grounds for termination of her contract were "(1) incompetence (2) insubordination against reasonable rules of the employer." In a subsequent letter of September 11, 1973, she was informed of specific allegations leveled against her relative to each of these grounds. Nowhere in these letters is there any reference to the merger of Long Lane School, Middletown, for girls and the Connecticut School for Boys, Meriden, as an element under consideration with respect to either of the stated grounds for dismissal. Nonetheless, at the hearing, Deputy Commissioner Charles C. Gray, the presiding officer, asked one of the witnesses who testified for the plaintiff how she felt a local homeowners association thought about the merger; and another witness how the association would react to the plaintiff's reinstatement. Nowhere does the record disclose any indication as to how the information sought by the deputy commissioner was relevant to either of the stated grounds for termination of the plaintiff's contract. We have no way of knowing what effect this line of questioning and the information derived therefrom had on the ultimate decision which was made by the deputy commissioner.

Under the UAPA, furthermore, "members or employees of an agency assigned to render a decision or to make findings of fact and conclusions of law in a contested case shall not communicate, directly or indirectly, in connection with any issue of fact, with any person or party . . . ." § 4-181. At the hearing held in this case, however, there was evidence that the deputy commissioner "fed information" to at least one of the witnesses for the defendant while that witness was testifying. Moreover, at the beginning of the hearing, the deputy commissioner, in his opening remarks, referred to the witnesses appearing on behalf of the defendant as "our" witnesses. In short, the principle of impartiality on the part of the hearing officer embodied in § 4-181 of the General Statutes was violated during these proceedings.

Under the circumstances, the court's conclusion that the plaintiff did not receive a fair and impartial hearing is amply supported by the foregoing evidence of the deputy commissioner's failure to comply with the standards of fairness and impartiality provided in the UAPA.

Having previously discussed the interplay of the UAPA with preexisting statutory provisions for judicial review, and, as also noted, the effect of § 4-189,⁵ repealing any provisions of the General Statutes inconsistent with the UAPA, it is clear, both from the comprehensive nature of the act and from the express repealer provision, that the legislature intended the UAPA to be a true uniform standard for agency action and judicial review thereof. Thus, where a conflict exists between pro-

---

⁵ When the UAPA originally became effective in 1972 it contained a provision similar to § 4-189. Public Acts 1971, No. 854 § 20.

visions of the UAPA and prior statutes, the UAPA must prevail. The situation is acutely dramatized by considering the effect of the primacy of the UAPA upon the present case.

The UAPA empowers the court reviewing the action of an administrative agency, whose proceedings were subject to the provisions of the act, to "reverse . . . the decision [of the agency] if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: . . . (3) made upon unlawful procedure . . . ." § 4-183 (g). Similar relief is authorized under the State Personnel Act, which states that the reviewing court "may affirm or reverse the decision appealed from." § 5-242 (e). We are not called upon here to delineate the furthest extent of the remedial powers granted under § 4-183 (g),[6] but the relief afforded therein is patently more extensive than mere reversal or affirmation. That is, under the State Personnel Act, the reviewing court is not specifically authorized to remand a case to the agency for a hearing de novo when it concludes that the proceedings appealed from were conducted in a procedurally defective manner; the absence of such spe-

---

[6] Section 4-183 provides in pertinent part: "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

cific authorization for such a ruling under the State Personnel Act may well be construed to mean that such power to remand is unavailable to a reviewing court under that act. See *Watson* v. *Howard,* 138 Conn. 464, 469, 86 A.2d 67; see also *Adam* v. *Connecticut Medical Examining Board,* 137 Conn. 535, 538–41, 79 A.2d 350. Under the UAPA, however, as it was in effect at the time of the proceedings in this case, the reviewing court does have the power to "remand the case for further proceedings." § 4-183 (g). As indicated above, to the extent that the cited remedial provisions of the State Personnel Act, applicable to the proceedings in this case, were inconsistent with the provisions in the UAPA conferring broader remedial powers upon reviewing courts, that portion of those provisions of the State Personnel Act are repealed by the UAPA. § 4-189. Thus, the court reviewing the defendant's action below had the power to remand the case for a hearing de novo upon concluding that the proceedings leading to the termination of the plaintiff's contract were procedurally unfair. The court chose, however, to reverse the defendant's decision and ordered the plaintiff reinstated with back pay and benefits, instead of remanding the case for a new hearing conducted pursuant to acceptable procedural standards. The UAPA, of course, does not require the court on review to limit its relief to remand when it concludes that the proceedings in question were "made upon unlawful procedure." § 4-183 (g) (3).[7] Nonetheless, the record in this case suggests that both the administrative and judicial proceedings below were conducted without

---

[7] In other words, the remedy fashioned by the court below may well be within the scope of powers specified in § 4-183 (g) (see footnote 6, supra) and § 4-183 (a) (see footnote 3, supra).

reference to the applicability of the UAPA. This court has the power to set aside a judgment where the record discloses that the court whose decision is appealed from did not apply the appropriate law to the facts of the case before it. *Johnson* v. *Zoning Board of Appeals,* 156 Conn. 622, 624, 238 A.2d 413. We cannot determine from the record whether the court, had it measured the legality of the proceedings in this case against the specific criteria enunciated in § 4-183 (g) and then, in that light, considered the wide range of alternative remedies available under the UAPA, would still have decided to reverse the defendant's decision and order the plaintiff reinstated with back pay and benefits, rather than remand the case for a hearing de novo. Accordingly, because of the novel circumstances presented by the facts of this case, we have concluded that the case should be remanded to the Court of Common Pleas to consider the agency action in accordance with the UAPA and this opinion, and to determine whether the matter should be further remanded to the agency, or whether the court, upon a finding that one of the six criteria of § 4-183 (g) applies, should reinstitute its order of reinstatement, back pay, and benefits.

The judgment is vacated and the case is remanded for further proceedings in accordance with the UAPA and this opinion.

In this opinion the other judges concurred.