## CONNECTICUT AIR SERVICE, INC. *v.* DANBURY AVIATION COMMISSION
### (13563)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued February 2—decision released June 27, 1989

*Jonathan B. Orleans,* with whom were *Julie A. Harrison* and, on the brief, *L. Douglas Shrader,* for the appellant (plaintiff).

*Keith D. Dunnigan,* with whom, on the brief, was *Philip F. von Kuhn,* for the appellee (defendant).

Covello, J. This is an appeal from a decision of the defendant Danbury Aviation Commission (commission). The dispositive issue is whether a right to appeal from a decision of this commission exists under the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. We conclude that the record is inadequate to make such a determination and remand the matter for further proceedings.

On November 16, 1987, the commission voted to revoke certain permits that it had issued to the plaintiff Connecticut Air Service, Inc. (ConnAir), which authorized ConnAir to do business as a fixed base operator (FBO) at the Danbury Municipal Airport. ConnAir appealed this decision to the Superior Court. The commission filed a motion to dismiss the action claiming that no statutory basis exists for such an appeal and, therefore, the court was without jurisdiction to entertain the matter. In response to the motion, ConnAir argued that the commission is an "agency" within the meaning of General Statutes § 4-166 (1)[1] and that a right of appeal therefore exists under the provisions of General Statutes § 4-183.[2] On August 4, 1988, the trial court found that the commission is not an agency within the meaning of § 4-166. Finding no other authority for an appeal, the trial court concluded that it was indeed without jurisdiction, granted the motion to dismiss and rendered a judgment of dismissal. ConnAir appealed that decision to the Appellate Court. We thereafter transferred the matter to ourselves pursuant to Practice Book § 4023.

[1] General Statutes § 4-166 (1) provides in relevant part: " 'Agency' means each state board, commission, department or officer . . . authorized by law to make regulations or to determine contested cases."

[2] General Statutes § 4-183 provides in part: "APPEAL TO SUPERIOR COURT. (a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal under this chapter . . . ."

## I

On appeal, ConnAir first renews its argument that the commission is an "agency" within the meaning of § 4-166 (1) and therefore its decisions are appealable pursuant to § 4-183. Specifically, the plaintiff claims that the commission is a "state . . . commission" within the meaning of § 4-166 (1) and, therefore, all of its decisions are appealable as a matter of right under the UAPA. We do not agree that the commission is such an agency.

The responsibility for insuring the general public interest and safety for those traveling in aircraft in Connecticut reposes in the commissioner of transportation (commissioner). General Statutes § 15-41.[3] In furtherance of this mandate, the commissioner is charged with the enforcement of all statutes, regulations and other laws of this state concerning aeronautics. General Statutes § 15-44.[4] The commissioner has statutory powers to conduct investigations, inquiries and hearings concerning aeronautical matters. General Statutes 15-45.[5]

---

[3] General Statutes § 15-41 provides: "The commissioner may perform such acts, issue and amend such orders, and make and amend such reasonable general or special regulations and procedure and establish such minimum standards, consistent with the provisions of this chapter, as he deems necessary or appropriate, and which are commensurate with and for the purpose of protecting and insuring the general public interest and safety, the safety of persons receiving instruction concerning, or operating, using or traveling in, aircraft, and of persons and property on land or water, and to develop and promote aeronautics in this state. No regulation of the commissioner shall apply to airports or other air navigation facilities owned by the federal government within this state."

[4] General Statutes § 15-44 provides: "The commissioner and aeronautics inspectors of the department, and each state, county and municipal officer charged with the enforcement of state and municipal laws shall enforce and assist in the enforcement of this chapter and of all regulations made pursuant thereto, and of all other laws of this state relating to aeronautics."

[5] General Statutes § 15-45 provides: "The commissioner may hold investigations, inquiries and hearings concerning matters covered by the provisions of this chapter, aircraft accidents or orders and regulations of the commissioner."

Statutes and regulations that the commissioner is required to enforce include those relating to operations of aircraft while either the pilot or the aircraft is not properly licensed; the revocation or suspension of the right to operate aircraft that are not in an airworthy condition; the revocation or suspension of the licenses of unqualified or chemically dependent pilots; the inspection of airports, restricted landing areas, heliports, air schools, flying clubs and air navigational facilities; the unlawful use of, tampering with, or interference with aircraft; tampering with or interference with any airport, heliport landing field or airway and its associated equipment; investigation of aircraft accidents; the careless, negligent or reckless operation of aircraft; the acquisition of land and airspace for the use of aircraft, airports, heliports, restricted landing areas, as well as areas that may be hazardous to airports; the removal of obstructions to air navigation; the establishment and maintenance of clear zones for all public airport runways; the disposition of abandoned aircraft; the operation of aircraft by those who are under the influence of alcohol or drugs or the carriage of passengers who are under the influence of alcohol or drugs; and finally, the establishment of airport approach plans.[6]

It is evident that the commissioner possesses comprehensive powers with respect to the supervision and enforcement of virtually every aspect of aeronautical activity within the state. These obligations and duties are not limited to those activities carried on by the state or those occurring solely on or over state property, but also include aeronautical activities conducted within the confines of any municipality.

For its part, the Danbury Aviation Commission derives its authority from Connecticut Special Act No. 381 of the January session of the 1947 General Assem-

---

[6] See appendix for relevant General Statutes.

bly.[7] It is specifically authorized "to make and enforce local rules, regulations and ordinances concerning ground and *flying activities on or over town property at airports,* and *to provide for compliance with the enforcement of federal and state laws, rules and regulations relating to aeronautics.*" (Emphasis added.) 25 Spec. Acts 580, No. 381, § 1 (3). This special act is the only enumeration of the commission's powers.

General Statutes § 15-80 also authorizes municipalities to establish aviation commissions such as the one here in issue.[8] Such commissions are only empowered,

[7] Special Act No. 381 of the January session of the 1947 General Assembly provides: "Section 1. The aviation commission of the town of Danbury shall have power: (1) To negotiate leases of land, facilities and buildings owned by the town of Danbury and used for airport purposes, and, upon the completion of such negotiations, to make recommendations as to the terms of such leases to the selectmen of said town; (2) to examine the qualifications of applicants for the position of airport manager and other personnel deemed necessary for the operation and maintenance of the town's airports and to make recommendations to the board of selectmen of said town for the hiring of such manager or other personnel; (3) to make and enforce local rules, regulations and ordinances concerning ground and flying activities on or over town property at airports, and to provide for compliance with the enforcement of federal and state laws, rules and regulations relating to aeronautics; (4) to plan the present and future development of airports within and for the town of Danbury and to negotiate with state and federal authorities regarding such development; and (5) to issue permits for flying and other aeronautical activities in connection with the use of the Danbury Airport and to fix the fees for such permits, which fees shall be paid to the selectmen of the town of Danbury, and shall be deposited into the town's general fund.

"Sec. 2. No airport manager or other personnel shall be removed after appointment except with the approval of said commission.

"Sec. 3. The commission shall, annually, prepare a budget for submission to the town board of finance with respect to all items involving expenditures at airports and for other aeronautical purposes within and for the town of Danbury."

[8] General Statutes § 15-80 provides in part: "(a) Any town . . . may, at any annual or special meeting . . . vote to establish an aviation commission . . . .

"(b) Such aviation commission shall be charged with the administration of such local ordinances as may, from time to time, be enacted, concerning airports, landing fields and aeronautics."

however, to administer local ordinances that concern airports, landing fields and aeronautics. Danbury has never enacted any local ordinances concerning its airport, landing fields or aeronautics. In fact, the sole reference to the commission in the Danbury Code of Ordinances is found in § 2-40 and states: "Said commission shall have all of the powers and duties established by the statutes of the State of Connecticut and special acts of the State of Connecticut and the ordinances of the Town and City of Danbury pertaining to airports and airport commissions." Neither General Statutes § 15-80, Special Act No. 381, nor the Danbury Code of Ordinances provides for an appeal from the rulings of the commission.

In furtherance of its special act mandate, the Danbury Aviation Commission adopted a comprehensive set of "Rules and Regulations for the Use of Danbury Municipal Airport." These rules and regulations require written permission before commencement of "any construction on City property or on *adjacent* property." (Emphasis added.) Rules and Regulations for the Use of Danbury Municipal Airport § 7.6. Further, all permittees (which includes FBOs) are to "abide by all rules and regulations promulgated by the Commissions or the [Federal Aviation Administration] necessary for the safe operation of the Airport *including, but not limited to, flight and ground operations on, or in the vicinity of, the Airport.*" (Emphasis added.) Id., § 7.10. The commission, therefore, undertakes to regulate and control not only operations within the airport boundaries, but also operations adjacent to city property and within the vicinity of the airport.

Thus, we are confronted with the anomalous situation that separate legislative enactments empower both the commissioner of transportation and the Danbury Aviation Commission to exercise parallel and overlapping authority in connection with aeronautical activi-

ties within the Danbury area. Since the legislature, through its enabling statutes, has charged the commissioner of transportation with the supervision and control of virtually every aspect of aeronautical activity conducted within the state, including that carried out at a municipal level, we conclude that such supervision and control is principally a state function and duty.[9] See *Murphy* v. *Berlin Board of Education,* 167 Conn. 368, 372, 355 A.2d 265 (1974). Since Special Act No. 381 empowered the commission to exercise nearly identical supervisory powers and duties within the Danbury environs, we conclude that to the extent that these powers and duties are congruent, in those areas that do overlap, the local commission's activities could only be carried out as an agent of the commissioner of transportation. As an agent, the commission, therefore, is not, in and of itself, a "state . . . commission" within the meaning of § 4-166 (1) and, therefore, its decisions do not, per se, qualify for appellate review under the UAPA.

The acts of an agent, however, are ascribable or chargeable to the principal. *Robert Lawrence Associates, Inc.* v. *Del Vecchio,* 178 Conn. 1, 13, 420 A.2d 1142 (1979); *West Haven* v. *United States Fidelity & Guaranty Co.,* 174 Conn. 392, 395, 389 A.2d 741 (1978). Therefore, to the extent that the commission was in fact acting as an agent, its decisions made while acting in such a capacity would be chargeable to its principal, the commissioner of transportation, a person who

---

[9] We are not confronted here with the circumstance wherein the General Assembly has articulated certain principles and policies and then delegated their implementation to local officials and agencies making it clear that their enforcement has been made a local function and duty. See, e.g., General Statutes § 7-148 et seq., "Municipal Powers"; § 8-1 et seq., "Zoning"; § 14-236, "Multiple-lane highways"; § 29-252, "State building code"; § 29-298, "Certification of local fire marshals"; § 29-404, "Local building official to administer state demolition code"; § 47a-1 et seq., "Rights and Responsibilities of Landlord and Tenant."

is clearly a "state. . . officer" within the meaning of § 4-166 (1) and from whose decisions an appeal unquestionably lies under the UAPA. See General Statutes § 4-166 (1).

"Although the finding of an agency relationship is ordinarily a question of fact; *Beckenstein* v. *Potter & Carrier, Inc.,* [191 Conn. 120, 133, 464 A.2d 6 (1983)]; *Conte* v. *Dwan Lincoln-Mercury, Inc.,* 172 Conn. 112, 124, 374 A.2d 144 (1976) . . . unless the statutory scheme permits a finding of an agency relationship, there is no factual question to resolve." *Gordon* v. *Bridgeport Housing Authority,* 208 Conn. 161, 184–85, 544 A.2d 1185 (1988).

Such a statutory scheme being evident here, the issue of whether an agency relationship actually exists becomes a question of fact. This relationship must be shown to exist with respect to the precise issue that is the subject matter of the appeal. *Murphy* v. *Berlin Board of Education,* supra, 373.

The complaint alleges that the commission revoked ConnAir's permits "for the alleged nonpayment of certain fees and charges"; that the commission's actions were based in part upon the "alleged failure to permit certain inspections of its property for safety purposes"; and that its decision was based in part "on charges which were not specified in the notice of the hearing." If an evidentiary hearing discloses that the factual basis of the commission's decision involved aeronautical activities in which the commission was acting as an agent for the commissioner of transportation (such as the use of unsafe airplanes or unqualified pilots), then such a decision could well be appealable under the UAPA. If, however, despite the existence of an agency relationship in certain other areas, the subject matter of the dismissal involved solely a local matter (such as the nonpayment of locally determined charges or fees),

then the required agency relationship as to that subject would not exist and access to the appellate process via the UAPA would not be available. Absent a finding as to the factual basis for the commission's decision, however, we cannot make a determination as to the existence or nonexistence of an agency relationship between the commission and the commissioner of transportation.

## II

The commission further contends that even if it is an "agency" within the meaning of § 4-166 (1), ConnAir has no right to appeal under General Statutes § 4-183 (a), which provides, in pertinent part, that "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal under this chapter . . . ." In the present case, the commission argues that the proceedings below did not constitute a "contested case." "Contested case" is defined in § 4-166 (2) as "a proceeding, including but not restricted to rate-making, price fixing and licensing, in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held . . . ." According to the commission, the proceedings below did not constitute a contested case because no legal rights were determined and no statutory right to a hearing existed. We do not agree.

A legal right was determined in the proceedings below as ConnAir's complaint alleges that its permits, until revoked, authorized it to conduct its business and carry out a livelihood on airport premises. A determination with respect to one's right to earn one's occupation or means of livelihood constitutes a determination with respect to a "property right"; see

*Connecticut Education Assn.* v. *Tirozzi,* 210 Conn. 286, 295, 554 A.2d 1065 (1989), citing *Bell* v. *Burson,* 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971); *Pet* v. *Department of Health Services,* 207 Conn. 346, 353–54, 542 A.2d 672 (1988); *Leib* v. *Board of Examiners for Nursing,* 177 Conn. 78, 83, 411 A.2d 42 (1979); *Hart Twin Volvo Corporation* v. *Commissioner of Motor Vehicles,* 165 Conn. 42, 45, 327 A.2d 588 (1973); and, therefore, involves a legal right. Moreover, to the extent that an agency relationship is found to exist between the commission and the commissioner, the proceeding that was held below would qualify as a hearing required under § 4-166 (2).

Accordingly, if, on remand, an agency relationship is found to exist between the commissioner and the commission, a hearing involving the determination of a legal right will be deemed to have taken place thereby making the proceeding below a "contested case" within the meaning of § 4-166 (2). As a contested case, it will qualify for appellate review under § 4-183 (a) of the UAPA.

There is error, the judgment is set aside and the matter is remanded for further proceedings in accordance with this opinion.

In this opinion, PETERS, C. J., CALLAHAN and GLASS, Js., concurred.

SHEA, J., dissenting. In construing the definition of "agency" in General Statutes § 4-166 to include municipal commissions to the extent that they perform state functions, the majority follows *Murphy* v. *Berlin Board of Education,* 167 Conn. 368, 355 A.2d 265 (1974), in which this court held that a town board of education was a "state board" and thus an "agency" within the meaning of § 4-166 from which an appeal was authorized in a contested case. The court reasoned that the

local board was a "state board" because it had long been held that in Connecticut, except for budgetary matters, local boards of education serve as agents of the state in their communities. Id., 372–73.

In response to *Murphy*, the legislature, in 1975, amended the definition of "agency" in § 4-166 by the enactment of Public Acts 1975, No. 75-529, to exclude local boards of education specifically.[1] This court in *Lee v. Board of Education*, 181 Conn. 69, 75–76, 434 A.2d 333 (1980), concluded that the amendment was a "legislative declaration of the meaning of the original act," citing as one reason for this conclusion the fact that "it was not readily apparent that local or regional boards of education would constitute state boards or agencies under the UAPA as originally enacted." I view *Lee* as a rejection of the position adopted in *Murphy* that a local board or commission becomes a state agency for the purpose of an appeal under the UAPA whenever it performs a state function.

There are other local agencies, in addition to local boards of education and local aviation commissions, where there is some overlap of regulation or function between the municipality and the state. For example, local traffic authorities in erecting signs or signals on local streets are required to comply with state traffic commission standards. General Statutes § 14-236. Local building officials enforce the state building, fire and demolition codes. General Statutes §§ 29-252 (d), 29-298 (c), 29-404. In many of these situations statutes expressly provide for rights of appeal apart from the UAPA. If we adopt the view that a local agency becomes a state agency when performing a state function, these separate appeal provisions become superfluous.

---

[1] Public Acts 1975, No. 75-529, added, "town and regional boards of education" to the preexisting exclusions from the definition of "agency" in General Statutes § 4-166 (1), "the legislature, courts, governor, lieutenant governor or attorney general."

It may well be desirable for there to be a right of appeal from a decision of any municipal agency, similar to the right provided by the UAPA to appeal from decisions of state agencies in contested cases. Since the right of appeal has always been regarded as wholly statutory, however, I am inclined to let the legislature continue to pick and choose those situations in which it is to be made available.

Accordingly, I would affirm the trial court's dismissal of the appeal.

## Appendix

General Statutes § 15-52 provides in part: "No person whose right to operate any aircraft in this state has been suspended or revoked shall operate any aircraft during the period of such suspension or revocation. No person shall operate or cause to be operated any aircraft of which the right to operate has been suspended or revoked."

General Statutes § 15-54 provides: "The commissioner is authorized to revoke or suspend temporarily or permanently the right to operate aircraft, when he determines that any aircraft is not airworthy, or that any airman is not qualified, has wilfully violated the provisions of this chapter or the regulations prescribed pursuant thereto or any other statute of this state relating to aeronautics, or any Act of Congress relating to aeronautics, or any rule or regulation promulgated pursuant thereto, or the statutes or rules or regulations of another state relating to aeronautics, is addicted to the use of narcotics or any other habit-forming drug or to the excessive use of intoxicating liquor, has made any false statement in any application for registration of a federal license certificate or permit or has been guilty of other conduct, acts or practices dangerous to the public safety and the safety of those engaged in aeronautics."

General Statutes § 15-66 provides in part: "To carry out the provisions of this chapter, the commissioner and any official or employee of the department and any state

or municipal officer charged with the duty of enforcing this chapter may inspect and examine at reasonable hours any premises and the buildings and other structures thereon where airports, restricted landing areas, heliports, air schools, flying clubs or other air navigation facilities or aeronautical activities are operated or carried on.''

General Statutes § 15-68a provides: ''Any person who operates or uses, or causes to be operated or used, or tampers or interferes in any way with any aircraft without the consent of the owner, or who obtains the consent of the owner to the use of his aircraft by false and fraudulent means, statements or representations, shall be fined not more than one thousand dollars or imprisoned not more than one year or both for a first violation, for a second violation shall be imprisoned not more than ten years and for each subsequent violation shall be imprisoned not more than fifteen years.''

General Statutes § 15-69 provides: ''Any person who interferes or tampers with any airport, heliport, landing field or airway or the equipment thereof shall be fined not less than two hundred dollars nor more than one thousand dollars or imprisoned not more than five years or be both fined and imprisoned.''

General Statutes § 15-71a provides in part: ''Any pilot, whether resident or nonresident, of a civil aircraft involved in an accident resulting in personal injury or substantial damage to the aircraft shall immediately notify the commissioner or the state police. If the pilot or pilots are incapacitated, any person who caused or authorized the operation of such aircraft at the time of the accident shall be responsible for giving such notification. . . . The commissioner may make an investigation of such accidents as he deems advisable or in lieu of a detailed investigation may accept a copy of the final report by a federal investigation agency.''

General Statutes § 15-72 provides: ''No person shall operate any aircraft carelessly, negligently or recklessly, or in such a manner as to endanger the property, life or limb of any person, having regard to the proximity of

other aircraft, weather conditions, field conditions and, while in flight, the territory flown over."

General Statutes § 15-73 provides in part: "Where necessary in order to provide unobstructed air space for the landing and taking-off of aircraft, in case of airports, heliports and restricted landing areas acquired or operated by the state, the commissioner . . . is granted authority to acquire, in the same manner as is provided for the acquisition of property for airport purposes, easements through or other interests in airspace over land or water, interests in airport hazards outside the boundaries of the airports, heliports or restricted landing areas, and such other airport protection privileges as are necessary to insure safe approaches to the landing areas of such airports, heliports and restricted landing areas and the safe and efficient operation thereof."

General Statutes § 15-74 (a) provides: "The commissioner shall notify the owner or person responsible for the existence of any obstacle so located as to constitute a hazard to aerial navigation or to the efficient or safe use of any airport, requiring such owner or other person to remove such obstacle within such reasonable time as is fixed by said commissioner. The owner or owners of such airport shall pay to the owner of such obstacle just compensation for such removal."

General Statutes § 15-74b (b) provides: "(1) Immediately upon July 6, 1971, the commissioner of transportation shall establish clear zones, in accordance with regulations adopted by him, for all public airport runways, and shall establish a list of priorities for the abatement or correction of encroachments thereon by public service companies. (2) Subject to the availability of funds, said commissioner shall from time to time order the relocation, removal or such other appropriate corrective action as he deems necessary to abate or correct such encroachments on clear zones."

General Statutes § 15-76 (a) provides in part: "The commissioner, any employee of the department, any officer

attached to an organized police department, any state police officer, any sheriff or any constable, within his precinct, upon discovery of any aircraft apparently abandoned, whether situated within or without any airport or landing field in this state, shall take such aircraft into his custody and may cause the same to be taken to and stored in a suitable place.''

General Statutes § 15-77 provides in part: ''No person shall operate or attempt to operate any aircraft on the ground or in the air while under the influence of intoxicating liquor or of any drug. No person shall operate or attempt to operate any aircraft on the ground or in the air carrying passengers who are under the influence of intoxicating liquor or of any drug.''

General Statutes § 15-90 provides in part: ''The commissioner is directed to formulate and adopt, and from time to time as may be necessary revise, an airport approach plan for each publicly-owned airport in the state. Each such plan shall indicate the circumstances in which structures or trees or both are or would be airport hazards, the area within which measures for the protection of the airport's aerial approaches should be taken and what the height limits and other objectives of such measures should be.''