[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, owner of a two family residential structure which is located on a 3.55 acre lot that also contains a single family structure owned by another, appeals from a decision by the ZBA denying his appeal of a Cease and Desist Order issued by the town's Zoning Enforcement Officer and, further, denying his application for a variance for one of his units. CT Page 7453
On December 10, 1988, the Zoning Enforcement Officer for the Town of Wilton issued a Cease and Desist Order to the plaintiff and to the owners of the one-family structure stating that:
 "The properties are located in an R-2A Zone which permits the use of one single family residence per lot. The minimum acreage per lot is 2 acres. The parcel of property upon which your dwelling unit is located is only 3.55 acres. It has come to my attention that there are three dwelling units on the parcel each designated for use as a single family residence, in violation of the Wilton Zoning Regulations, Section 29-26A."
That order gave the property owners sixty days from its receipt to bring the property into compliance with the cited regulation. Thereafter, the plaintiff, through counsel, advised the Zoning Enforcement Officer of plaintiff's difficulty in understanding the order and, as a result, a meeting was held between plaintiff's counsel, Wilton Town Counsel and the Zoning Enforcement Officer. On February 10, 1989, a Cease and Desist Order was issued to each of the owners of the subject premises, informing them that they were in violation of Section 29-26A, 1(a) and Section 29-27 of the Wilton Zoning Regulations. Section29-26A, 1(a), effective in 1964, provides that:
 "The following are the only uses permitted in each district. A. R-2A single family residence district:
1. Permitted Principal uses.
 a. Single Family Dwelling not to exceed one per lot."
Section 29-27 requires a minimum lot size of two acres. The order further stated that "because the size of the lot is 3.55 acres and there are 3 residences currently on the lot, only one single family residence is permitted. . . . You are hereby ordered to cease and desist from maintaining, or using or selling more than one single family residence on the above-referenced property." The plaintiff, along with the owners of the single family dwelling, Mr. and Mrs. Harris, filed timely appeals of this order to the ZBA and in addition, the plaintiff filed an application for a variance for each of his two units. The parties were represented by their respective attorneys at the ZBA hearing on April 10, 1989. No one opposed the Harris' appeal and evidence was presented by them to show that the house which they purchased from the plaintiff in September 1988 for $695,000.00 had been CT Page 7454 constructed in 1760 and had been continuously occupied and used as a residence. It was further established that sustaining the order against them would cause them to lose their investment in the property.
The ZBA granted the Harris' appeal on the grounds that continuous use since 1760 had been established and enforcement of the order against them would result in a substantial hardship. After hearing the plaintiff's appeal, the ZBA continued its hearing to May 8, 1989 to await a written opinion from Town Counsel concerning several legal issues raised by the plaintiff. On May 8, 1989, the ZBA denied the plaintiff's appeal of the Cease and Desist Order and denied the application for a variance as to one of his residential units but granted his application for a variance as to the residential unit in which the plaintiff resides with his family. The plaintiff's application was for a variance of Section 29-26 (A)(1)(a) of the Wilton Zoning Regulations to permit three single family dwellings on the 3.55 acre lot described by him as Unit #2 and Unit #3, owned by him, of the Drum Hill Condominium. Legal notice of the ZBA's decision was published on May 10, 1989 in the Wilton Bulletin and this appeal was filed on May 24, 1989.
The plaintiff is found to be aggrieved by the ZBA decision within the provisions of Section 8-8 (a) of the General Statutes. That decision was a final decision within the contemplation of Sections 8-8 (a) and 8-10 of the General Statutes. See, Conto v. Zoning Commission, 186 Conn. 106, 117 (1982).
One issue raised by the plaintiff on this appeal is that his right to procedural due process was violated because the Cease and Desist Order failed adequately to apprise him of the violations ascribed to him. This claim is made notwithstanding the fact that the order of December 9, 1988 was revised at the plaintiff's request and only after plaintiff's counsel met with Town Counsel and the Zoning Enforcement Officer was the order of February 10, 1989 issued. That is the order which was appealed to the ZBA and is at issue here. The order was explicit as to the sections of the regulations claimed to have been violated. "Notice will not ordinarily be held insufficient for nonprejudicial deficiencies, as where, for example, the record discloses that the person actually knew what the charges against him were." Murphy v. Berlin Board of Education, 167 Conn. 368, 375 (1974). The order was more than sufficient and the plaintiff's apparent pique over being served cannot give rise to any constitutional infirmity.
A second issue raised on this appeal is that the ZBA's decision was arbitrary and illegal. The gist of this claim appears to lie in the fact that the ZBA, while granting the CT Page 7455 Harris' appeal of the Cease and Desist Order, denied the plaintiff's appeal of the same order. The record and the reasons stated by the ZBA in granting the Harris' appeal are legally sufficient to support the ZBA's decisions as to the denial of plaintiff's appeal of the order and of the application for a variance for one of his residential units. In the absence of a showing that the ZBA acted illegally or arbitrarily or abused its discretion, the court, on review, cannot substitute its judgment for that of the local authority. See, Frito-Lay, Inc. v. PZC,206 Conn. 554, 572 (1988). Where there are no stated reasons or, the reasons stated are inadequate to support a decision, the record must be searched to find some basis for the action taken. Grillo v. Zoning Board of Appeals, 206 Conn. 362, 369 (1988). The Town of Wilton adopted zoning regulations in 1946 and the use regulations for an R-2A zone contained no limit as to the number of single family residences permitted on one lot but did specify a minimum area of two acres per family. Moreover, Section IV-A5 of the Zoning Regulations stated:
 "No structure may be altered or enlarged so as to contain more family units than permitted by this section, nor shall the plot on which an existing residence stands be reduced to less than the required area based on the number of family units therein."
The 3.55 acre parcel in question was, at the time of the of the regulations, part of a 12 acre tract of land owned by one of the plaintiff's predecessors in title, John Knauth. Prior to the adoption, the tract contained a 1760 colonial house and a barn used partially as a school with an attached residential unit. In 1962, a Certificate of Occupancy was issued to Knauth for remodeling the barn into living quarters. In 1964, the Wilton Zoning Regulations were amended, effective that year, restricting single family dwelling units to one per lot and, further, redesignating the minimum acreage per family as minimum acreage per lot. Thus, the regulations provided that, in an R-2A Zone, minimum acreage for a single family residence lot was two acres. Both regulations were in effect from 1964 to the present. The 1964 amendments further provided, at Section 29-5, "Use Regulations":
 "In residence districts, buildings, land or premises shall be used for one or more of the following uses or purposes: (a) One single family detached dwelling per lot with the customary accessory buildings for the use of occupants."
In 1982, John Knauth conveyed 8.5 acres of the tract to a developer, retaining the 3.55 acre lot that is the subject of CT Page 7456 this appeal. Thereafter, Knauth sold the subject lot to one Boyd Jones who, in turn, entered into a contract for sale of the property together with the buildings thereon to the plaintiff, with the closing and transfer of title scheduled for September 1988. Prior to the closing date, the plaintiff entered into a contract of sale of the 1760 colonial house to the Harrises and on the same day in September 1988, title to the entire 3.55 acre lot was conveyed to the plaintiff who, in turn, conveyed title to the 1760 colonial house to the Harrises. The plaintiff paid 1.1 million dollars for the lot and received $695,000.00 for the colonial. He moved into Unit #2 of the converted barn and advertised Unit #3 for sale.
If the three residential units were being used as residences on the original 12 acre tract in 1964, then the amendment that year restricting single family dwellings to one per lot would made the use of the property a legal nonconforming use for the three units. Prior to the amendments, Section 4A1(a) of the Wilton Zoning Regulations, 1962, governing residential districts, permitted "dwellings for one or more families with the customary accessory buildings for the use of occupants." Thus, any number of residential units were permitted on a tract, provided that the total acreage of the tract was equal to the two acre minimum acreage required per family. In order to retain the status of a legally protected nonconforming use, the three units on the subject property must have been continuously used or intended to be used as such since 1964 and such use must not have been impermissibly expanded.
It is clear that the use of the structures on the 3.55 acre lot as three residential units rather than one is a "use nonconformity". The property is in an R-2A Single-Family Residence District. Section 29-26A of the Wilton Zoning Regulations states that a permitted use in that district is "(a) single-family dwelling, not to exceed one (1) per lot." The ZBA found that the plaintiff's use of two structures as residential family dwellings on the subject lot containing the Harris' colonial, was a violation of the zoning regulations. Section 29-66 of the Regulations, governing nonconformity other than use is simply inapplicable because the plaintiff's use of his property in an R-2A District is prohibited. As noted previously, the ZBA continued its hearing on the plaintiff's appeal from April 10, 1989 to May 8, 1989 in order to obtain an opinion from Town Counsel. That written opinion is part of the record and states, succinctly, the legal principles involved and which the Board followed:
 "Either the applicant's property was subject to the 1964 regulations which required one single family per lot, and therefore was an illegal nonconforming use, CT Page 7457 or it was a legal nonconforming use by virtue of its existence under the regulations prior to 1964 and was subject to those regulations. The applicant cannot claim the benefit to the pre-1964 regulations which allowed more than one residence per lot while at the same time avoiding the requirements of said regulations which expressed the minimum acreage requirements in terms of each family unit."
 "Applying these regulations to the 1982 reduction of the parcel from 12 acres to 3.55 acres, said reduction violated the pre-1964 regulations because the property was reduced to "less than the required area based on the number of family units therein" It was no longer "lawful" under the pre-1964 regulations and was not "lawful" under the post-1964 regulations. It therefore lost its status as a protected, legal nonconforming use."
Since the pre-1964 regulations required a minimum acreage per family of two acres and prohibited any reduction of acreage to less than that required, compliance by the plaintiff with those regulations would require a lot size of 6 acres. No less a size lot is required under the post-1964 regulations mandating a two acre lot in this R-2A District. The record more than sufficiently supports the ZBA's decision of May 8, 1989. The plaintiff's claim that his due process rights under Section 8-7
of the General Statutes is without merit. That section provides, in part, that:
 "Whenever a zoning board of appeals grants or denies any. . . variance in the zoning regulations applicable to any property or sustains or reverses wholly or partly any order, requirement or decision appealed from, it shall state upon its records the reason for its decision. . ."
Although desirable, the requirement that the zoning authority state the reasons for its decision on the record is not mandatory. A. P. W. Holding Corporation v. Planning Zoning Board of Appeals, 167 Conn. 182, 186 (1974); Hovanesian v. Zoning Board of Appeals, 162 Conn. 43, 47 (1971); Ward v. Zoning Board of Appeals, 153 Conn. 141, 144 (1965). Courts cannot substitute their judgment for the wide and liberal discretion vested in local zoning authorities when they have acted within their prescribed legislative powers. Zoning authorities are allowed this discretion in determining the public need and the means of meeting it because the local authority lives close to the circumstances and conditions which create the problem and shape the solution. Burham v. Planning Zoning Commission, CT Page 7458189 Conn. 261, 266 (1983).
The record supports the ZBA's conclusion that the reduction of the 12 acre tract to 3.55 acres resulted in an illegal expansion of a nonconforming use. "The legality of an extension of a nonconforming use is essentially a question of fact." Planning and Zoning Commission v. Craft, 12 Conn. App. 90, 97
(1987). Courts have uniformly held that "The ultimate goal of zoning is to eliminate nonconforming uses. The method of accomplishing this is to prevent any increase in the nonconforming use and eventually to lessen and do away with the nonconforming use." Grushkin v. Zoning Board of Appeals, 26 Conn. Sup. 457,462 (1967)
The decision of the ZBA is affirmed and the plaintiff's appeal is denied.
LEANDER C. GRAY, JUDGE