DECISION ON APPEAL
PER CURIAM.
This case presents the issue of what remedies may be ordered by the Mohegan Gaming Disputes Court in a license appeal hearing pursuant to MTO 2002-13.[1] The Mohegan Gaming Disputes Trial Court, Wilson, J., sustained the appeal of the Appellee Guy P. MacLean from the action of the Appellant Office of the Director of Regulation barring and excluding him from the Reservation[2], finding that there were no grounds to bar the Appellee from the Reservation and, treating the order as a license revocation, that the same was not supported by substantial evidence.[3] At issue in this appeal is whether the trial court had the authority to order the Appellee reinstated to his position as poker dealer and to order the Appellee to pay back pay retroactive to the date of his termination. We hold that the sovereign immunity of The Mohegan Tribe, in the absence of an explicit waiver of sovereign immunity, bars such an award.[4]

Procedural History

Appellee Guy P. MacLean, hired as a poker dealer by the Mohegan Sun Casino,[5] was the holder of a valid, current gaming license as required by the Mohegan *275 Tribe—State of Connecticut Gaming Compact (hereafter “Tribal-State Gaming Compact”), Section 5(a). Based on an allegation by the poker shift manager that Mr. MacLean instructed a patron in ways to avoid currency transaction reporting requirements by using different windows or having another person cash in some of the patron’s winnings, disciplinary action was commenced. Mr. MacLean denied the allegations, and a hearing was held at which the only evidence in support of the allegations was the unsworn written statement of the poker shift manager and copies of the Mohegan Sun policy regarding currency transaction reporting. Nevertheless, the decision to bar Mr. MacLean from the Reservation was upheld based on this un-sworn statement and the authority of the Mohegan Tribal Gaming Commission to suspend gaming and non-gaming licenses pursuant to Section 5 of the Tribal-State Gaming Compact[6] and MTO 95-2.[7]
The trial court’s decision, insofar as it sustains the appeal from the barring order and revocation of Appellee’s gaming license, has not been challenged. In its attempt to remedy an injustice felt to have been inflicted on Appellee, the trial court looked to Connecticut precedent under the Connecticut Uniform Administrative Procedure Act, specifically § 4-183(g), which is substantially similar to MTO 2002-13 Section 3. Based on the equitable powers conferred on judges of the Gaming Disputes Court,[8] and a suggestion by the Connecticut Supreme Court that reinstatement with back pay may well be within the scope of powers conferred on the Court of Common Pleas (now the Superior Court) by Conn. Gen.Stat. § 4-183(g),[9] the trial court ordered reinstatement and back pay retroactive to the date of termination.[10] This appeal followed.

Discussion

The sovereign immunity of The Mohegan Tribe and its entities has been a consistent basis of the jurisprudence of this Court:
It is clear, and the Gaming Disputes Court has always held, that the Mohegan Tribe possesses all inherent sovereign rights and powers of an independent, indigenous sovereign nation. As such, the Mohegan Tribe, the Mohegan Tribal Gaming Authority, and the Tribe’s other enterprises or political subdivisions possess the “common-law immunity from suit traditionally enjoyed by sovereign powers”, Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978), absent “a clear waiver [of immunity] by the Tribe or congressional abrogation.” Ager v. Office of the Director of Regulation, 1 G.D.R. 1, 2, 1 Am. Tribal Law 539 (1997), quoting Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L,Ed.2d 1112 (1991).
Worthen v. Mohegan Tribal Gaming Authority, 1 G.D.R. 90, 93, 3 Am. Tribal Law 467, 2001 WL 36175283 (200 L). Any such *276 waiver of sovereign immunity must be unequivocally expressed and cannot be implied. Young v. Mohegan Tribal Gaming Authority et al., GDTC-T-03-116-FAM, 4 Am. Tribal Law 567, 2003 WL 25795199 (2003) (Manfredi, J.). “The issue of tribal sovereignty is jurisdictional in nature.” McClendon v. United States, 885 F.2d 627, 629 (9th Cir.1989); Ager v. Office of the Director of Regulation, 1 G.D.R. 1, 4, 1 Am. Tribal Law 539 (1997).
The trial court relied on the similarity between MTO 2003-13 Section 3 and Conn. Gen.Stat. § 4~183(g), as well as Connecticut Supreme Court dicta as the basis for finding of such a waiver of sovereign immunity. The provisions of the Uniform Administrative Procedure Act, Conn. Gen.Stat. § 4-166 et seq., however, do not in any way address the issue of sovereign immunity, except to the extent of providing for the award of reasonable fees and expenses to certain prevailing parties as set forth in Conn. Gen.Stat. § 4-184a, a provision far more extensive than its Mohegan counterpart set forth in MTO 2002-13 Section 3(m).[11] The Connecticut Appellate Court has treated Section 4-184a as a waiver of sovereign immunity in a case brought against the Connecticut Commission on Human Rights and Opportunities, where the Commission argued that the doctrine of sovereign immunity required that an award thereunder be strictly construed.[12] Oakley v. Connecticut Commission on Human Rights and Opportunities, 38 Conn.App. 506, 515-16, 662 A.2d 137 (1995).
In the instant case, the trial court’s award went far beyond the authorization contained in MTO 2002-13 Section 3(m), which was not considered in its decision,[13] and awarded back pay retroactive to the date of termination.[14] The trial court, in its ruling on Defendant’s Motion to Rear-gue, held that the sovereign immunity of The Mohegan Tribe had been waived by virtue of the consent to suit contained in MTO 2002-13 Section 2 and MTO 2002-13 Section 3(j), allowing the Court to “render a judgment under subsection (k) of this section or remand the case for further proceedings.” 1 G.D.R. at 125, 1 Am. Tribal Law 580. Applying the general principle that, in the absence of applicable, governing tribal law, the Gaming Disputes Court may apply relevant provisions of Connecticut law,[15] the trial court looked to Connecticut Supreme Court dicta suggesting that the Court of Common Pleas judgment ordering the Commissioner of Children and Youth Services to reinstate a *277 teacher with back pay “may well be within the scope of powers specified in § 4-183(g)”.[16] McDermott v. Commissioner of Children and Youth Services, 168 Conn. 435, 363 A.2d 103 n. 7 (1975). That matter was remanded to the Court of Common Pleas, and the issue apparently was never ruled upon in any reported decision.[17]
Even if the Uniform Administrative Procedure Act had been held by the Connecticut Supreme Court in some way to constitute a waiver of sovereign immunity,[18] the more fundamental issue presented is whether a decision by the Connecticut Supreme Court finding a waiver of the sovereign immunity of the State of Connecticut becomes the substantive law of the Mohegan Tribe by virtue of MTO 95-4 Section 301 and Article XIII, Section I of the Constitution of The Mohegan Tribe of Indians of Connecticut. We hold that the applicable tribal law of the Mohegan Tribe recognizes and preserves the sovereign immunity of the Tribe, and that a waiver of sovereign immunity by the State of Connecticut may not be incorporated into the substantive law of The Mohegan Tribe pursuant to MTO 95-4 Section 300 et seq.
The sovereign immunity of the Mohegan Tribe and its entities is preserved, rather than abrogated, by the provisions of MTO 95-4:
Section 502. Nothing contained in the preceding paragraph or elsewhere in this Ordinance shall be construed as a waiver of the sovereign immunity of the Tribe, the Authority or the Tribe’s other enterprises or political sub-divisions, or of its officers, agents or employees, unless specifically denominated as such.
MTO 95-4 Section 502. Article ¥1 of MTO 95-4, which provides for recognition of contractual waivers of sovereign immunity granted by The Mohegan Tribe, is careful to distinguish that such Article “shall not be deemed a waiver of immunity of the Tribe or any of its subdivisions in the absence of independent provisions of any governing contract or agreement.” MTO 95-4 Section 600.
The substantive law of The Mohegan Tribe is therefore careful to preserve the Tribe’s sovereign immunity, as well as the requirement that any waiver thereof must be unequivocally expressed and cannot be implied. Worthen, 1 G.D.R. at 93, 3 Am. Tribal Law 467, 2001 WL 36175283; Young, GDTC-T-116-FAM, 4 Am. Tribal Law 567, 2003 WL 25795199 (2003). “Statutes in derogation of sovereign immunity must be strictly construed. In order for the sovereign to be sued without its consent, there must be a clear intention by the legislative body[19] through the use of express terms, (citations omitted)” Bethel *278 v. Mohegan Tribal Gaming Authority, Et Al., 1 G.D.A.P. 1, 4, 2 Am. Tribal 373, 2000 WL 35733912 (2000). In this regard, any provision of the Connecticut General Statutes, or of the common law of the State of Connecticut, that purports to waive the sovereign immunity of The Mohegan Tribe “is in conflict with Mohegan Tribal Law” and not part the substantive law of The Mohegan Tribe. MTO Section 301(a)-(c).[20]
In deciding appeals brought pursuant to MTO 2003-13, the Gaming Disputes Court must first look to the provisions of the consent to suit contained therein:
By adoption of this Ordinance, the Tribe and the Mohegan Tribal Gaming Authority hereby consent to be sued in the Mohegan Gaming Disputes Court in civil actions for relief as is expressly provided for pursuant to this Ordinance. This consent to suit is strictly limited as provided in the Section ... No other private right of action by any person shall be deemed created by this Ordinance. The Mohegan Gaming Disputes Court shall be the exclusive judicial forum vested with subject matter jurisdiction to adjudicate appeals brought pursuant to this Ordinance.
MTO 2003-13 Section 2. The relief specified by the Ordinance, in the event that the court finds that substantial rights of the party appealing have been prejudiced by the action of the agency (here, the Office of the Director of Regulation), is as follows:
(j) ... If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment.
(k). If a particular agency action is required by law, the court, on sustaining the appeal, may render a judgment that modifies the agency decision, orders the particular agency action, or orders the agency to take such action as may be necessary to effect the particular action.[21]
MTO 2003-13 Section 3(j)-(k).
The trial court’s judgment correctly followed this mandate regarding the order bariing the Appellee from the Reservation and reinstating his gaming license. In the absence of an express waiver of the sovereign immunity of The Mohegan Tribe and its entities, however, the damage award[22] cannot stand.[23]
The judgment of the trial court sustaining the appeal from the order barring the Appellee from the reservation and/or re *279 voking his gaming license is affirmed; the trial court’s award of back pay retroactive to the date of his termination is hereby reversed.

, The consent to suit set forth in MTO 2002-13, adopted December 11, 2002, is specifically made "applicable to any cases currently pending in the Gaming Disputes Court regarding final agency decisions MTO 2002-13 Section 2, and therefore governs the instant case.

, Although the decision of the Hearing Officer described the action taken in these terms, the issue noticed for the hearing was that of a gaming license denial (actually revocation), and the Appellee was given notice of his appeal rights pursuant to MTO 95-6, now MTO 2003-13. The trial court correctly treated the case as one involving the revocation of a gaming license, which has not been challenged on appeal.

. Neither finding is challenged on appeal.

. At oral argument, counsel for the Appellant conceded the issue of reinstatement was moot, inasmuch as the Appellee had already-been reinstated. Accordingly, this opinion will deal only with award of back pay.

. The Mohegan Sun Tribal Gaming Authority is vested with the authority to hold and manage all the Gaming assets of The Mohegan Tribe. Constitution of The Mohegan Tribe of Indians of Connecticut, Article XIII, Section 1: MTO 95-2 Section 4. Appellant correctly argues that the Defendant-Appellant in this case did not hire Mr. MacLean.

. See Tribal-State Gaming Compact, Section 5(g) dealing with revocation or suspension of gaming licenses; non-gaming employees appear to be subject to Section 5(j),

. See MTO 95-2, Section 12(5) concerning the authority of the Director of Regulation.

. MTO 95-4, Section 103.

. McDermott v. Commissioner of Children & Youth Services, 168 Conn. 435, 445 n. 7, 363 A.2d 103 (1975). The trial Court acknowledged that this portion of the opinion is dicta.

. The trial court's reasoning is set forth in its ruling on the Defendant’s Motion to Open Judgment and Set Aside, GDTC-AA-02-144 (Wilson, J., March 18, 2003).

. MTO 2003 Section 3(m) provides that "In all appeals taken under this section, costs may be charged in favor of the prevailing party”, whereas Conn. Gen.Stat. § 4-184a, which excludes persons based on their net worth and businesses over a certain size, provides for the award of "reasonable fees and expenses”, including attorneys and witness fees, up to seven thousand, five hundred dollars.

. The Appellate Court did not directly address the sovereign immunity claim, but rather found that " § 4-184a provides clear statutory authority for the discretionary award of attorney's fees ,38 Conn.App. at 520, 662 A.2d 137.

. As such, there was no consideration of the apparent inconsistency between MTO 2002-13 Section 3(m) and MTO 95-4 Section 701(2), which provides "The Mohegan Tribe or Tribal Gaming Authority when a party to a civil action shall not be liable for the payment of the costs, expenses, or attorney's fees of the opposing party.”

. In its original decision, the issue of sovereign immunity was not discussed. Mac Lean v. Office of Director of Regulations, 1 G.D.R. 110, 4 Am. Tribal Law 516, 2002 WL 34461861 (2002).

. See Constitution of the Mohegan Tribe of Indians of Connecticut, Article XIII, Section 1.

. There was no discussion of sovereign immunity by the Connecticut Supreme Court in McDermott.

. Unlike the present appeal, McDermott involved a healing which was “statutorily required to be held before the dismissal of a tenured teacher’’ pursuant to Conn. Gen.Stat. § 5-242. Rybinski v. State Employees' Retirement Commission, 173 Conn. 462, 471, 378 A.2d 547 (1977).

. The inapplicability of the Uniform Administrative Procedure Act to issues of sovereign immunity is reinforced by Conn. Gen.Stat. § 4-164a, which makes the actions of the Claims Commissioner exempt from the provisions of Conn. Gen.Stat. §§ 4-176e to 4-183. Decisions regarding the sovereign immunity of the State of Connecticut are not to be resolved through the Uniform Administrative Procedure Act. See Reilly v. Smith, 34 Conn. L. Rptr 486, 2003 WL 21037197 (Conn.Super. April 17, 2003) (Silben, J.).

."Ail legislative and executive powers of the Mohegan Tribe not granted to the Council of Elders shall be .vested in the Tribal Council ...” Constitution of the Mohegan Tribe of Indians of Connecticut, Article IX, Section 1.

. This does not mean to suggest that Connecticut caselaw interpreting sovereign immunity is to be disregarded; rather that the requirement that any waiver of sovereign immunity of The Mohegan Tribe "be unequivocally expressed and cannot be implied” cannot be lessened or diluted by the General Statutes of Connecticut or Connecticut common law.

. MTO 2003-13 Section 3(j) and (k) are identical to their counterparts in Conn. Gen. Stat. § 4-183(j) and (k).

. Employees of The Mohegan Tribal Gaming Authority are barred from asserting tort claims arising from or out of their employment. MTO 2001-07 Section 4(E).

.This is consistent with the jurisprudence of the Mashantucket Pequot Tribal Court. Only after finding that M.P.T.O. 061694-03 (the Mashantucket Employee Appeal Ordinance) specifically provided for the waiver of sovereign immunity for "back pay and or benefits" and allowed "reinstatement of the employee and/or awarding] of lost wages and benefits ..." did the Court find an unequivocally expressed waiver of sovereign immunity. Mitchell v. Brown, 1 Mash. 193 (1996).