DECISION ON APPEAL
This case presents an issue of first impression as to whether the Mohegan Tribal Discriminatory Employment Practices Ordinance, MTO 2002-04, S 104 authorizes the award of damages against the Mohegan Tribal Gaming Authority in the absence of proof that the discriminatory conduct resulted in an economic loss or loss of employment. Following a bench trial, the Mohegan Gaming Disputes Trial Court, Guernsey, C.J., held that the limited waiver of sovereign immunity in MTO 2002-04, SS 108(D)(2)(a) and 109, precluded the award of damages to Appellant under MTO 2002-04, § 104, for a hostile working *470 environment because she failed to prove any resulting loss of income or employment. The trial court also held that Appellant failed to prove, by a preponderance of the evidence, her claim of gender discrimination based on a constructive discharge and retaliatory conduct in violation of MTO 2002-04, S 106. We affirm.

FACTUAL FINDINGS BELOW

The trial of this matter spanned a five month period, during which 15 witnesses testified. In its Memorandum of Decision, the trial court made extensive Findings of Fact which are summarized below.
In February 2000, Appellant, Sylvia Tomsky, began working in Appellee’s Licensing Department. In October 2001, Gary Surratt became the manager of the Licensing Department. Shortly after Gary Surratt became the manager, Appellant and, to varying degrees, five other women working in the Licensing Department observed Mr. Surratt repeatedly touching his genital area. In November 2001, Appellant and two other female employees in the Licensing Department, each filed separate “Employee Incident Reports” complaining about Mr. Surratt’s repeated touching of himself in inappropriate places. Appellant’s Incident Report claimed that Mr. Surratt’s touching of his groin area was creating a very uncomfortable environment in the Department.
After an investigation into the complaints, the Vice President of the Human Resources Department, on November 8, 2001, issued a written Record of Discussion reciting in general terms the complaints made and that Mr. Surratt was told his behavior must immediately cease. The complainants were informed that the issues were addressed, but without any elaboration.
Alter Appellant’s complaint, she continued working in the Licensing Department until April 29, 2002 and received an Employee Commendation for Excellent Performance from Mr. Surratt.
From approximately April 29, 2002 through July 31, 2002, Appellant was suspended from her employment for unrelated reasons, but her position was held open for her and she returned to the Licensing Department in August 2002.
Upon her return, Appellant’s criticism of management resulted in a confrontation with another Licensing Department employee, resulting in both receiving written Records of Discussions. After the incident, but before receiving the Record of Discussion, Appellant filed, on August 13, 2002, a second written complaint against Mr. Surratt which did not mention any inappropriate touching behavior, but instead expressed general dissatisfaction with his leadership, including that he created a hostile work environment by practicing favoritism, creating animosity among co-workers, and did not appropriately welcome Appellant back after her suspension.
There was only one other written allegation by another employee that the touching behavior continued beyond November 2001, and this allegation was inconsistent with the testimony at trial from two other female employees. Based on this, and statements made by the appellant during the interview on October 11, 2002 discussed below, the trial court found that the appellant failed to prove that the touching behavior continued substantially beyond November 2001.
In October 2002, Appellant expressed an extremely negative opinion of Mr. Surratt to another employee, so upsetting the other employee that she reported it to management, which began an investigation into the matter. During an October H, 2002 interview as a part of this investigation, Appellant stated that Mr. Surratt’s earlier *471 behavior in touching his crotch had ceased, but she was concerned it might happen again. At this October 11, 2002 meeting, Appellant expressed her unhappiness in how the Department of Human Resources had handled the inappropriate touching matter in doing nothing more than slapping Mr. Surratt on the wrist; she wanted him removed from his position. Shortly after expressing her opinions about Mr. Surratt, Appellant resigned.

DISCUSSION

1. STANDARD OF REVIEW
This Court has not adopted a standard of review for an appeal of a Gaming Disputes Trial Court’s decision following a bench trial in that this is the first appeal from such a decision. In Connecticut, however, it has long been established that the standard of review of a trial court’s findings of fact is that an appellate court is bound to accept the lower court’s factual findings unless the findings are clearly erroneous. DiMartino v. Richens, 203 Conn. 639, 822 A.2d 205 (2003); Christian Brothers, Inc. v. South Windsor Arena, Inc., 7 Conn.App. 648, 651, 509 A.2d 1095 (1986). Moreover, for a finding of fact to be clearly erroneous, there must be no evidence in the record to support it or, in spite of the supporting evidence, the appellate court is left with the definite conviction that a mistake was made. Connecticut National Bank v. Giacomi, 242 Conn. 17, 70, 699 A.2d 101 (1997).
Connecticut common law is significant because MTO 95—4, An Ordinance Establishing the Gaming Disputes Court, Article Ilf, Section 301(c), directs the Gaming Disputes Court to apply the common law of C.orinecticut when it does not conflict with Mohegan Tribal Law^.[1] Based on this directive, we will apply the clearly erroneous standard in determining whether the trial court’s factual findings can be sustained.
With respect to issues of statutory construction, the Connecticut Supreme Court has repeatedly held that statutory construction is a legal question and, therefore, the applicable standard of review is plenary. Grondin v. Curi, 262 Conn. 637, 649, 817 A.2d 61 (2003); Kelo v. City of New London, 268 Conn. 1, 843 A.2d 500 (2004). Accordingly, we adopt a plenary approach in deciding whether the trial court’s construction of MTO 2002-04 can be upheld, ever mindful of the fact that this construction implicates the Mohegan Tribe’s sovereign immunity and “Statutes in derogation of sovereign immunity must be strictly construed.” MacLean v. Office of the Director of Regulation, 1 G.D.A.P. 20, 5 Am. Tribal Law 273, 2004 WL 5659257 (2004), quoting Bethel v. Mohegan Tribal Gaming Authority, 1 G.D.A.P. 1, 4, 2 Am. Tribal Law 373, 2000 WL 35733912 (2000).
II. THE HOSTILE WORKING ENVIRONMENT CLAIM
Appellant’s Second Amended Complaint seeks damages from Appellee under MTO 2002-04 for gender discrimination. One of Appellant’s claims for relief under MTO 2002-04, § 104 is based on a hostile working environment created by Gary Surratt’s repeatedly touching his genital area in the presence of Appellant and other female employees. At the time, Mr. Surratt was the Manager of the Licensing Department.[2]
*472 MTO 2002-04 § 104 próvidos in relevant part:
“It shall be an unlawful employment practice for an Employer to discriminate, with respect to hiring, discharging, compensation, benefits, demotion, disciplining, suspending, barring, or layoff, on account of an Individual’s: (A) race, gender, color, national origin, pregnancy or related medical condition, age, ancestry, marital status, sexual orientation, or military status;”
Based on its extensive Findings of Fact, the trial court found that:
“The Plaintiff has certainly produced a prima facie case that she, and other women in the Licensing Department, were subjected to ‘a sexually objectionable environment ... both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so ... ’ Faragher v. City of Boca Raton, 524 U.S. 775, 787, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998). That the conduct of Gary Sur-ratt was objectively offensive was confirmed by the testimony of five women in the Department; that is [sic] was found to be subjectively so by the Plaintiff is beyond any doubt.” Memorandum of Decision, pp. 7-8 (Footnote Omitted)
Nevertheless, the trial court ultimately held that Appellant’s hostile working environment claim was not actionable under the language of MTO 2002-04, § 104.
In reaching this conclusion, the trial court compared the language in MTO 2002-04, § 104 with federal and state laws recognizing hostile working environment claims. It noted that such a claim for relief under federal law[3] and also Gonnect-ieut statute[4] is premised on express statutory language prohibiting discrimination with respect to “the terms, conditions, or privileges of employment.” That phrase is glaringly absent from MTO 2002-04, § 104, which instead expressly prohibits discrimination only with respect “... to hiring, discharging, compensation, benefits, demotion, disciplining, suspending, barring, or layoff, on account of an Individual’s ... gender ...”
The trial court then focused its attention on whether the elimination of the phrase “terms, conditions, or privileges of employment,” from MTO 2002-04, § 104, was intended to limit the scope of actionable claims under the Ordinance. The resolution of that issue was inextricably interwoven with the scope of the waiver of sovereign immunity contained in the Ordinance, MTO 2002-04, § 109 which provides:
“Nothing in this Ordinance waives the sovereign immunity of Tribe or the Mohegan Tribal Gaming Authority except to the limited extent and for the limited purposes expressly set forth in § 108 of this Ordinance.”
In turn, MTO 2002, § 108(D)(2)(a) limits the remedies available to the Gaming Disputes Court for violations of the Mohegan Tribal Employment Practices Ordinances as follows:
*473 “(a) If the Court finds the Complaint is supported by a preponderance of the evidence, it may order the following remedies only: (i) One (1) year of lost wages, which the Individual has a duty to mitigate; (ii) Attorney’s fee that shall not exceed one-third (1/3) of the lost wage award; and/or (iii) Re-instatement or instatement of the Individual, either into the position that is the subject of the litigation or into a comparable position that the Individual is qualified to hold of equivalent, status, wages and benefits, as determined by the Court, (b) The remedies specifically enumerated within this section shall be the sole and exclusive remedies.”
Striving to achieve internal consistency in MTO 2002-04 among Sections 104, 108 and 109, the trial court reasoned that since the only remedies it can award under § 108(D)(2)(a) involve lost wages or loss of employment, then it necessarily follows that the court cannot award damages based on non-economic losses for claims of discriminatory conduct during the course of employment. In short, the elimination of the phrase “terms, conditions, or privileges of employment” from MTO 2002-04, § 104, was intentionally done in order to limit actionable claims to those consistent with the waiver of sovereign immunity in § § 108 and 109. Having determined for the reasons discussed below that Appellant failed to prove any economic loss resulting from her hostile working environment claim, the trial court found for Appellee on this claim.
On appeal, Appellant challenges the trial court’s holding that MTO 2002-04, § 104 protects employees from discrimination occurring during the course of employment only to the extent they have suffered an economic loss or loss of employment. In support of its position, Appellant notes that the trial court’s ruling, taken’ to the extreme, would mean that “a supervisor could coerce an employee to engage in sexual relations, and if that employee submitted to keep her job, then, under the standard set by this court, that employee would have no recourse.” Appellant’s Brief, p. 19. In other words, employees who cannot afford to lose their employment, are left without remedy.
In support of a more liberal construction of MTO 2002-04, § 104, Appellant relies on various federal court decisions, holding that there is no requirement of a direct economic harm when plaintiff has suffered a tangible employment action. See, Jin v. Metro Life Ins. Co., 310 F.3d 84, 97 (2nd Cir.2002); Holly D. v. Calif. Institute of Technology, 339 F.3d 1158, 1167 (9th Cir.2003).
Appellant’s arguments for a liberal construction of MTO 2002-04, § 104, would be more persuasive if the language in § 104 did not implicate other sections of the Discriminatory Employment Practices Ordinance that involve the waiver of sovereign immunity. Indeed, Appellant fails to address the fact that claims under MTO 2002-04, § 104, must conform to the waiver of sovereign immunity in 2002-04, §§ 108 and 109, which waiver must be “unequivocally expressed and cannot be implied.” MacLean v. Office of the Director of Regulation, supra at 20, 5 Am. Tribal Law at 274-75, 2004 WL 5659257.
The express language in MTO 2002-04, § 108(D)(2)(a) limiting judicial remedies to cases involving economic losses or loss of employment mandates that 2002-04, § 104 contain a similar limitation on claims actionable thereunder. Accordingly, we find that the trial court did not err in holding that Appellant’s claim of a hostile working environment required proof of a resulting economic loss or loss of employment.
*474 III. CONSTRUCTIVE DISCHARGE
In an effort to establish the type of loss required by MTÜ 2002-04, § 104, Appellant sought to prove . below that the conditions under which she worked in the Licensing Department resulted in her constructive discharge. The trial court held, however, that Appellant had not sustained her burden of proof with regard to the elements of a constructive discharge.
On appeal, Appellant contends that the trial court erred in its findings as to the requirements necessary to establish a constructive discharge. According to Appellant, “The court does not state what standard it used to determine if a constructive discharge took place, but only concluded that since no one felt compelled to resign, that the plaintiff was not compelled to resign.” Appellant’s Brief, p. 26.
We disagree. The trial court expressly adopted the elements of a constructive discharge as recognized by the Connecticut Appellate Courts in Seery v. Yale-New Haven Hospital, 17 Conn.App. 532, 540, 554 A.2d 757 (1989):
“Constructive discharge occurs when an employer renders an employee’s working conditions so difficult and intolerable that a reasonable person would feel forced to resign.” Neale v. Dillon, 534 F.Supp. 1381, 1390, aff'd, 714 F.2d 116 (2d Cir.1982). See generally, annot., constructive discharge—Title VII, 55 A.L.R. Fed. 418 (1981). A claim of constructive discharge must be supported by more than the employee’s subjective opinion that the job conditions have become so intolerable that he or she was forced to resign. Neale v. Dillon, supra; He ye v. Bureau of National Affairs, 59 Md.App. 642, 649, 477 A.2d 1197, 1201 (1984). “Normally, an employee who resigns is not regarded as having been discharged, and thus would have no right of action for abusive discharge.” Beye v. Bureau of National Affairs, supra. Through the use of constructive discharge, the law recognizes that an employee’s “voluntary” resignation may be, in reality, a dismissal by the employer.
Having adopted the Seery standard, the trial court then analyzed the evidence in terms of this standard. It found that Mr. Surratt’s offensive behavior had ended by approximately November 8, 2001, which was 11 months before Appellant resigned. During this 11 month period, the trial court noted that Appellant elected to return to the Licensing Department after an unrelated approximately 3 month suspension and never again complained about Mr. Surratt’s inappropriate touching behavior. The trial court also noted that in the second complaint Appellant filed against Mr. Surratt,: in August 2002, she accused him of practicing favoritism among employees, creating animosity among co-workers, and not sufficiently “welcoming” her back,[5] but did not allege continuation of his previously offensive conduct.
While recognizing that Appellant was extremely offended by Mr. Surratt’s conduct in 2001, and unhappy that he was not dealt with more severely by Appellee, the trial court concluded that her resignation 11 months later was not the result of conditions “so difficult and intolerable that a reasonable person would feel forced to resign” Memorandum of Decision, p. 11. The court buttressed this factual conclu *475 sion by noting that no other employees had felt compelled to resign despite the previous observation by several other women of Mr. Surratt’s behavior.
Appellant disputes that the offensive conduct of Mr. Surratt stopped by the time of her resignation. However, she provides no support for this assertion in the record. Moreover, under the “clearly erroneous” standard of review applicable to the trial court’s factual findings, there is an insufficient basis in the record to contradict its ultimate conclusion that the working conditions in the Licensing Department were not so difficult that a reasonable person w'ould feel forced to resign.
IV. RETALIATION
The trial court also found that Appellant had not satisfied her initial burden of proving by a preponderance of the evidence that Appellee retaliated against her for filing a complaint relating to MTO 2002-04. Appellant now argues that the trial court erred in reaching this conclusion by applying an “incorrect standard” for determining retaliatory conduct. Appellant’s Brief, p. 21. Appellant then assesses the conduct which she believes is retaliatory pursuant to the standard the federal courts have adopted under Title VII of the Civil Rights Act of 1964. However, the Mohegan Tribe expressly has not consented to the applicability of Title VII,[6] and Title VII[7] expressly excludes Indian tribal employers from its coverage. Significantly, Appellant fails to discuss the employment actions she characterizes as retaliatory under the law applicable to Ap-pellee. MTO 2002-04, § 106, provides that:
“An Employer is prohibited to discharge or in any other manner discriminate against an employee as a result of such employee’s filing of a complaint relating to this Ordinance or as result that the employee testified or is about to testify in a proceeding related to this Ordinance.”
The employment actions that Appellant argues were retaliatory involve her “being written up on two occasions, with one occasion while her complaint against Surratt w-as pending” Appellant’s Brief, p. 22. To the extent Appellant is suggesting that she was retaliated against for filing her second complaint against Mr. Surratt in August 2002, her argument must fail. MTO 2002-04, § 106 protects employees from retaliatory action resulting from the “employee’s filing of a complaint relating to this Ordinance ... ”, which Ordinance prohibits, inter alia, the gender discrimination that is basis of Appellant’s law suit. However, as the trial court found, “the second complaint contained no allegation of continued inappropriate touching, but rather complained of a lack of communication in the office, that Mr. Surratt had created animosity among co-workers, that he did not welcome Appellant back as did other coworkers, and that he created a hostile work environment by practicing favoritism.” Memorandum of Decision, p. 9. Because the second complaint, on its face and as found by the trial court, did not raise the specter of gender discrimination, the filing of the complaint was not an activity protected by the Employment Discrimination Ordinance.
*476 Moreover, although Appellant’s first complaint in November 2001 certainly involved charges of gender discrimination, we cannot find that the two occasions in the summer of 2002 when she was written up were in retaliation for the filing of this complaint. To so hold would be in direct contradiction of the trial court’s factual findings surrounding these two incidents, in which it concluded:
“Again, the evidence established that subsequent to the filing of her complaint in November, 2001, the Plaintiff received a commendation from Gary Surratt. During the period of approximately one hundred days while the Plaintiff was not eligible to work, the Defendant held open her position, to which she returned as soon as she was eligible. Thereafter, the first disciplinary incident in August, 2002, arising out of a confrontation following Plaintiff s. expression of her negative view of management, resulted in a Record of Discussion for both Plaintiff and the other employee, hardly indicative of retaliatory discrimination. The second, m October, was still in the investigative stage when Plaintiff resigned.” Footnote Omitted, Memorandum of Decision, p. 12.
As noted above, this Court is bound to respect the factual findings and factual conclusions of the trial court unless they are clearly erroneous. Here there is ample evidence in the record to support the trial court’s findings. The trial court did not err in finding Appellant had not satisfied her initial burden of proving by a preponderance of the evidence that Appel-lee retaliated against her for filing a complaint relating to MTO 2002-04.
Accordingly, the judgment of the trial court is hereby affirmed.

. 301(c) provides that "The common law of ; the State of Connecticut interpreting the positive law adopted in Section 301(b), above, which body of law is hereby adopted as and declared to be the common law of the Mohegan Tribe for application by the Gaming Disputes Court, except as such common law is in conflict with Mohegan Tribal Law.”

. In her Second Amended Complaint, Appellant abandoned her previous claims against Mr. Surratt in his individual capacity.

. Title VII of the Civil Rights Act of 1964 makes it “an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s race, color, religion, sex or national origin.” 42 U.S.C. § 2000e-2(a)(l). (Emphasis Added)

. Conn. Gen Stat § 46a—60(a)( 1) provides that it is a discriminatory employment practice for any employer to “refuse to hire or employ or to bar or to discharge front employment any individual or to discriminate against such individual in compensation or in leans, conditions, or privileges of. employment." (Emphasis Added)

. In her Brief, p. 125, Appellant states that being "treated differently" can give rise to a constructive discharge claim, Robinson v. Sappington, 351 F.3d 317 (2003). However, in that case the Court found there was an issue of material fact, precluding summary judgment as to whether the alleged conduct could be construed as intolerable. Here, the issue has been factually resolved against Appellant after trial.

. MTO 2002-04, § 109, provides: "Bv adoption of this Ordinance, The Mohegan Tribe and The Mohegan Tribal Gaming Authority ("MTGA'') does not consent to the applicability of Title VII of the Civil Rights Act of 1964

. 42 U.S.C.A., § 2000e: “The term ‘employer’ . .. does not include (1) ... an Indian tribe