MEMORANDUM OF DECISION ON DEFENDANTS MOTION FOR SUMMARY JUDGMENT

GUERNSEY, Chief Judge.
The Defendant Mohegan Tribal Gaming Authority, pursuant to G.D.C.P. § 49,[1] has moved to dismiss the Plaintiffs Amended Complaint brought under the Mohegan Discriminatory Employment Practices Ordinance, MTO 2002-04. In her Amended Complaint, the Plaintiff, proceeding pro se, alleged gender discrimination, harassment, and retaliation arising out of her employment by the Defendant as a front desk clerk at the Mohegan Sun Hotel. The Defendant’s Motion for Summary Judgment is based on the argument that the Plaintiffs claims, founded principally on the allegation that she was ignored and not properly trained by her male supervisors, do not establish a violation of MTO 2002-04. For the reasons set forth below, the Court finds that in light of Plaintiffs allegations and documentary and other evidence,[2] as well as the highly restrictive *549 nature of the remedies permitted under MTO 2002-04, there is no genuine issue of material fact, and the Defendant is entitled to judgment as a matter of law.
FACTUAL BACKGROUND
The Plaintiff was hired by the Mohegan Tribal Gaming Authority (MTGA) effective August 21, 2002 as a hotel desk clerk.[3] Shortly before this, on August 19, 2002, another female, Emérita Ramos, was also hired as a hotel desk clerk.[4] Prior to commencing work at the front desk, she received computer training in another area of the hotel.[5] At the front desk, she worked with other employees who had been hired before her.[6] The Plaintiffs immediate supervisors were male[7], and while she would observe other male employees freely conversing with these supervisors, when she would request assistance with some part of her job, she was ignored.[8] The Plaintiff did not see how other female employees were treated and was not in a position to see if male employees required assistance.[9]
At that time the Front Desk Manager, Angel Montano, was female, as was the Hotel Director, Carmen Andre.[10] The Assistant Office Manager, Kristy Day, was also female. The Plaintiff alleges that on September 7, 2002, she contacted William Velardo by voicemail regarding her work environment, receiving in return a telephone call in return from Bruce Pine, Vice President, Hotel Operations, who responded that the supervisors were young and inexperienced.[11] Following this, the Plaintiff was contacted by Ms. Day, the Assistant Office Manager, for a “Coaching and Counseling Session”.
On September 23, 2002, the Plaintiff wrote a letter to Ms. Andre [12] complaining about the supervision provided by “Brad” and explaining her version of the events leading to the Plaintiff being written up on two occasions. She also described another situation in which two other supervisors stared at her for several moments before addressing her request for assistance, making her feel unwanted. On October 28, 2002 the Plaintiff again complained to Ms. Andre [13] that another female employee, Ms. Ramos, was listed as having seniority over the Plaintiff, as *550 well as complaining about mistakes made on her paycheck that had not yet been addressed. On October 30, 2002 the Plaintiff wrote to Ms. Day concerning the paycheck dispute and refusing to work overtime until the claimed overtime was paid.[14] On October 31, 2002 she again wrote to William Velardo addressing her “negative experiences” and reiterating the complaints made three days earlier in the letter to Ms. Andre concerning alleged seniority and paycheck errors.[15] Thereafter, on November 6, the Plaintiff was informed by Ms. Montano that there would be no adjustment in her pay.[16]
At various times the plaintiff has received Coaching and Counseling Memos or other notices for matters such as checking in a guest with a declined credit card, cashier overage or shortage, technical errors in posting, discourteous attitude towards supervisors, failure to sign out, and alleged improper callout. Finally, on November 17, 2002, she was issued a Notice of Unsatisfactory Performance/Misconduct and discharged for job abandonment/leaving assigned work area without permission; disrespect/insubordination with supervisors and managers, and not following the chain of command specifically after meeting with Bruce Pine and Carmen Andre.
DISCUSSION
As in the case of Tomsky v. Mohegan Tribal Gaming Authority, 2 G.D.R. 88, 5 Am. Tribal Law 340, 2001 WL 0000117 (2004), aff'd docket no. G.D.C.A.-T-04-503, 1 G.D.A.P. 28, 0 Am. Tribal Law 408, 2005 WL 6237208 (2005), a central issue presented by Plaintiffs claims is the extent of the limited waiver of sovereign immunity contained in MTO 2002-04. The Plaintiff has alleged disparate treatment by her immediate male supervisors, harassment and retaliation. The Court notes that the Plaintiff has consistently alleged, and testified, that she was ignored in her requests for direction and assistance directed to her male supervisors.[17] In her Objection to the Defendant’s Motion for Summary Judgment, she argued, in part, that “[t]he Plaintiff could not be adequately trained when there is no communication coming from supervisors who continually ignored the Plaintiffs request for instruction.”[18]
It shall be an unlawful employment practice for an Employer to discriminate with respect to hiring, discharging, compensation, benefits, demotion, disciplining, suspending, barring, or layoff, on account of an Individual’s ... gender
MTO 2002-04 § 104. The Ordinance also provides that an employment practice shall not be considered unlawful if the practice:
(A) constitutes a legitimate implementation by the Employer of a bonafide occupational qualification or need; or
(B) was the result of a legitimate, nondiscriminatory business decision ...
MTO 2002-04 § 105(A) and (B).
Plaintiffs complaint alleges discrimination in that, while she was allegedly ignored for varying periods of time by her male supervisors when she asked questions, she observed that male employees *551 would be allowed to ehat with these same supervisors, although she did not observe how they were treated when and if help was requested or how other female employees were treated. She further alleges that another female employee, Emérita Ramos, was given seniority over her. As to this latter contention, the Defendant has established, by affidavit, that the list allegedly demoting the Plaintiff was not tied to seniority, and that in any event, Ms. Ramos had seniority over the Plaintiff.
As for Plaintiffs principal allegation, that she was repeatedly ignored by her male supervisors, it is unnecessary to determine whether such allegations, if true, rise to the level of establishing a “hostile work environment” under Brittell v. Department of Correction, 247 Conn. 148, 717 A.2d 1254 (1998). Subsequent to the hearing on Plaintiffs Motion for Summary Judgment, the Gaming Disputes Court of Appeals issued its decision in Tomsky v. Mohegan Tribal Gaming Authority. In affirming the Gaming Disputes Trial Court’s holding that the limited waiver of sovereign immunity contained in MTO 2002-04 does not allow for the awarding of damages for a “hostile work environment” where the same did result in one or more of the elements of damage specified in MTO 2002-04 § 108(D)(2)[19], the Court of Appeals held:
The express language in MTO 2002-04, § 108(D)(2)(a) limiting judicial remedies to cases involving economic losses or loss of employment mandates that 2002-04, § 104 contain a similar limitation on claims actionable thereunder. Accordingly, we find that the trial court did not err in holding that Appellant’s claim of a hostile working environment required proof of a resulting economic loss or loss of employment.
Tomsky v. Mohegan Tribal Gaming Authority, docket no. G.D.C.A.-D-04-503, 1 G.D.A.P. 28, 6 Am. Tribal Law 468, 2005 WL 6237208 (2005).
Whereas Plaintiff has provided evidence of the existence of a genuine issue of material feet as to whether she was subjected to an arguably hostile work environment, by itself the same is dearly not actionable under Tomsky, supra, unless it produced the type of economic loss encompassed by MTO 2002-04 § 108(a). While the Plaintiff was indeed terminated, there is no evidence to support the claim that it was as a result of the alleged hostile work environment. In the Notice of Unsatisfactory Performance/Misconduct issued to the Plaintiff in connection with her termination, the reasons given were as follows:
1. Job abandonment/Leaving assigned work area without permission.
2. Disrespect/insubordination with Supervisors & Managers.
3. Not following the chain of command specifically after meeting with Bruce Pine & Carmen Andree [sic] in September.
The standard for the granting of a motion for summary judgment is well set- *552 tied and is set forth in eases such as Wallace v. MTA, 2 G.D.R. 51, 5 Am. Tribal Law 295, 2004 WL 6660109 (2004):
Pursuant to [Rule 49 and] Connecticut Practice Book § 17-49, Summary Judgment can be granted if the pleadings, affidavits and other documentary proof, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Connecticut Practice Book § 17-49; Bartha v. Waterbury House Wrecking Co,, Inc., 190 Conn. 8, 11, 459 A.2d 115 (1983), Marceau v. Norwich, 46 Conn.Supp. 197, 200, 746 A.2d 836 (1999). In passing on a Motion for Summary Judgment, the trial court is to determine whether an issue of fact exists, but may not try that issue if it does exist. Dorazio v. M.B. Foster Electric Co., 157 Conn. 226, 228, 253 A.2d 22 (1968).
Nevertheless, “[i]n deciding motions for summary judgment, the trial court is obligated to construe the evidence in the light most favorable to the nonmov-ing party.” Gabrielle v. Hospital of St. Raphael, 33 Conn.App. 378, 383, 635 A.2d 1232, cert. den., 228 Conn. 928, 640 A.2d 115 (1994). However, “[o]nce the moving party has presented evidence in support of the Motion or Summary Judgment, the opposing party must present evidence that demonstrates the existence of some material, disputed factual issue.” Wallace v. MTGA, 2 G.D.R. 51, 52, 5 Am. Tribal Law 295, 2004 WL 5660109 (2004).
In the instant ease the Defendant’s supporting documentation has established that the Front Desk Manager, the Hotel Director, and the Assistant Office Manager all were female, as was the coworker allegedly given seniority over the Plaintiff. A review of the disciplinary documentation regarding the Plaintiff shows that the Record of Discussion for calling out 25 minutes prior to the start of a scheduled shift was issued by Ms. Day, as were many of the Hotel Accounting Exception Reports and a Coaching and Counseling Memo regarding failure to sign out; and that Coaching and Counseling Memos were issued by a Supervisor, Mary Burch (one involving improper attitudes toward supervisors). The decision to terminate the Plaintiff was joined in (and signed by) Ms. Montano as Hotel Director. The Plaintiff has offered no evidence in opposition that would establish that the termination and other disciplinary materials listed above were the product of gender discrimination (Plaintiff’s First Count) or that the alleged hostile environment (Plaintiffs Second Count) produced any economic loss as required by MTO 2002-04 § 108(a). As to the claim of retaliation (Plaintiffs Third Count), brought pursuant of MTO 2002-04 § 106[20], the Gaming Disputes Court has not had occasion to determine whether the category of protected group defined as those “filing of a complaint relating to this Ordinance” refers only to those filing a Complaint with the appropriate Mohegan Court under § 108. Assuming arguendo, that the protection is not so limited,[21] the Plaintiff has offered no evidence establishing that her complaints related to a dis *553 criminatory employment practice are causally connected to her termination.[22]
Further emphasizing the lack of evidence of a material fact in dispute is the third reason given by the Defendant for her termination, the failure to follow the chain of command. Plaintiffs Complaint alleges that, following her September 7, 2002 voicemail to William Velardo, President of The Mohegan Sun Hotel, on September 14, 2002 Bruce Pine, the vice president of the Mohegan Sun Hotel, contacted her by telephone to discuss her work environment.[23] In her deposition she is unclear as to the particulars of the discussion, but recalled complaining about being ignored by supervisors.[24] According to her testimony, three days later she was contacted by Kristy Day for a coaching and counseling session.[25] According to the November 17, 2002 Notiee of Unsatisfactory Performance/Misconduct, the Plaintiff had failed to follow the chain of command despite being advised to do so in September.[26]
It is undisputed that the Plaintiff certainly knew how to complain to the Hotel Director, Ms. Andre, as evidenced by the letters of complaint addressed to Ms. Andre attached as exhibits to Plaintiffs com- • plaint. In October, 2002, having received no satisfaction in a complaint involving a paycheck dispute[27], she wrote to Ms. Day, then to Ms. Andre, and three days later, once again to William Velardo, the President of Mohegan Sun Hotel.[28] Once again, the Plaintiff has offered no evidence to establish the evidence of a material, disputed factual issue. There is nothing to link the decision to terminate the Plaintiff for failure to follow the chain of command with gender discrimination or any other practice declared unlawful under MTO 2004-02 § 104.
The Court notes that the testimony of the Plaintiff, if accepted at trial, could have established that subjectively she was made to feel unwelcome or even excluded by her immediate supervisors, and that they exhibited quite poor management and interpersonal skills in their position. The Plaintiff has testified in her deposition as to her academic credentials and sincere attempts to do her job, and there is no doubt that she views her termination as unfair. As has previously been noted, no employment appeal ordinance has been enacted by The Mohegan Tribal Council, Ager v. Office of the Director of Regula *554 tion, 1 G.D.R. 1, 4, 1 Am. Tribal Raw 480, 1997 WL 34678574 (1997), and this Court has no - authority to review employment decisions by The Mohegan Tribal Gaming Authority except under the Discriminatory Employment Practices Ordinance, MTO 2002-04.[29]
Accordingly, Summary Judgment may enter in favor of the Defendant.

. In relevant part, the procedures established under Conn. Prac. Bk. § 17-44 et seq: are substantially the same as G.D.C.P. 49.

. The pro se Plaintiff did not provide any documentary or other evidence as contemplated by G.D.C.P. Section 49(b) or (c), but did file an unsworn written Objection to Defendant's motion. However, the Defendant appended to its motion a copy of the sworn deposition testimony of the Plaintiff, which the parties, and the Court, have treated as ⅜ filing under G.D.C.P. Section 49(c), except *549 where clearly not based on personal knowledge. In addition, the Defendant filed two affidavits with extensive supporting documentation.

. Affidavit, of Bruce Pine, Paragraph 4; Affidavit of Angel Montano, Paragraph 4; Transcript of Deposition of Christina M. Winslow at 25.

. Affidavit of Angel Montano, Paragraph 5.

. Transcript of Deposition of Christina M. Winslow at 27.

. Id.

. The Plaintiff identified Brad Merseh, Joe Menino and Ryan O’Grady. Transcript of Deposition of Christina M. Winslow at 26. She also identified Gary Tate as a supervisor who ignored her request for assistance. Id. at 48.

. Transcript of Deposition of Christina M. Winslow at 29-31 and 77-78.

. Transcript of Deposition of Christina M. Winslow at 37.

. Affidavit of Angel Montano, Paragraph 7. The Plaintiff believes that she spoke with the Hotel Director, Carmen Andre. Transcript of Deposition of Christina M. Winslow at 32.

. Transcript of Deposition of Christina M. Winslow at 33.

. A copy of this handwritten letter is attached to Plaintiff's complaint.

. A copy of this handwritten letter is attached to Plaintiff's complaint.

. A copy of this letter is attached to Plaintiff’s complaint.

. A copy of this letter is attached to Plaintiff's complaint.

. Plaintiffs complaint, Count labeled "Harassment", paragraph 11.

. Transcript of Deposition of Christine \! Winslow at 29.

. Plaintiff's Objection to Defendant’s Motion, for Summary Judgment (hereafter referred ¡ ■ as “Plaintiff's Objection”, ¶ 1).

. The provisions of MTO 2002-04 § 108 strictly limit the remedies which the Mohegan ; Courts may order:
"(a) If the Court finds the Complaint is supported by a preponderance of the evidence, it may order the following remedies only: (i) One (1) year of lost wages, which the Individual has a duty to mitigate; (ti) Attorney's fee that shall not exceed one-third (1/3) of the lost wage award; and/or (iii) Re-instatement or instatemerit of the Individual, either into the position that is the subject of the litigation or into a comparable position that the Individual is qualified to hold of equivalent status, wages and benefits, as determined by the Court.
The remedies specifically enumerated within this section shall be the sole and exclusive remedies.”

. MTO 2002-4 § 106 prohibits the discharge or discrimination against an employee “as a x-esult of such employee's filing of a complaint relating to this Ordinance or as a result that the employee testified or is about to testify in a proceeding related to this Ordinance.”

. Indeed, under Tomsky v. Mohegan Tribal Gaming Authority, 2 G.D.R. 88, 5 Am. Tribal Law 340, 2004 WL 5660117 (2004), aff'd docket no. G.D.C.A.-T-04-503, 1 G.D.A.P. 28, 6 Am. Tribal Law 468, 2005 WL 6237208 (2005), such a limitation would appear substantially to dilute, if not virtually eliminate such protection.

. The three complaints that are closest in time to Plaintiff’s termination, written to Kristy Day, Carmen Andre, and William Ve-lardo, concern an alleged payroll error that appears to be unrelated to any claim of discrimination.

. Plaintiff's Complaint, Paragraphs 6-7.

. Transcript at 32-34.

. Transcript at 56.

. It is unclear exactly when this advisement occurred, as there is no Record of Discussion or Coaching and Counseling Memo referring to it filed with the Court, and the affidavit of Bruce Pine is silent on the issue. The Notice of Unsatisfactory Performance/Termination dated 11/17/2002 refers to failure to follow chain of command specifically after meeting with Bruce Pine and Carmen Andre in September, which presumably refers to the telephone call from Mr. Pine alleged in Plaintiff's complaint and conversations with Ms. Andre, see Transcript at 32, to whom the Plaintiff had addressed a number of letters of complaint, No affidavit of Carmen Andre has been submitted by either party.

. There is no suggestion by either party that the paycheck dispute involved any type of claimed discriminatory employment practice.

. Although the Plaintiff continuously refers to Mr. Velardo as such, the Court notes that his official position appears to be Chief Executive Officer of The Mohegan Tribal Gaming Authority.

. This Court expresses no opinion, nor should it, as to the merits of the decision to terminate the Plaintiff. Ordinances and statutes prohibiting employers from discrimination, such as MTO 2002-04, do not address allegedly unwise or allegedly plainly wrong employment decisions. In reversing a jury verdict in favor of a discharged plaintiff, the Second Circuit stated, with respect to the Age Discrimination in Employment Act, "the[Age Discrimination in Employment Act] does not make employers liable for doing stupid or even wicked things; it makes them liable for discriminating, for firing people on account of their age.” (Emphasis in original). Norton v. Sam’s Club, 145 F.3d 114, 119 (2d Cir.1998), cert. denied, 525 U.S. 1001, 119 S.Ct. 511, 142 L.Ed.2d 424 (1998).